A. W. MERRIAM v. THE CITY OF NEW ORLEANS.

Where the language of a city ordinance is ambiguous and susceptible of two different significations, one of which is against law, the court will ascertain and give effect to the intent and meaning of the ordinance, provided the same be not contrary to law.

The city ordinance which declares that "a tax of sixty dollars shall be assessed and collected from every keeper of a billiard table, *the whole tax being levied on each and every billiard table*" was intended to impose a *license tax* upon the particular calling or business of keeping a billiard table, and not a property tax upon the table itself.

Such a tax is equal and uniform upon all persons engaged in that kind of business.

APPEAL from the Fifth District Court of New Orleans, *Eggleston, J.* *J. Livingston*, for plaintiff. *J. J. Michel*, for defendant and appellant.

LAND, J. Section 102 of the charter of the city of New Orleans, approved March 20th, 1856, provides, that the city of New Orleans shall have power to levy taxes, commonly known as licenses, upon trades, professions, callings, and other business carried on, and upon carriages, hacks, drays, carts, and other vehicles used in said city; and said taxes, commonly known as licenses, laid as aforesaid, shall not be construed to be a tax on property, within the meaning of sections 36, 38 and 42 of this Act. Sess. Acts 1856, p. 158.

In pursuance of this section, the Common Council of the city of New Orleans passed an ordinance, approved December the 5th, 1856, and numbered 3671, to establish a uniform rate of taxes and licenses on professions, callings and other business, and on carriages, hacks, drays, and other vehicles; and by the 34th section thereof levied a license tax upon the keepers of billiard tables, in these words: " Every keeper of a billiard table, the whole tax being levied on each and every billiard table, sixty dollars."

Under this ordinance, the plaintiff paid the license tax on eight billiard tables on the 31st of January, 1857, and on the 1st of March, 1858, paid the same tax on sixteen billiard tables, amounting to the sum of $1473 60. These payments were made under protest, and this suit is brought to recover back the taxes thus paid, on the ground, that the tax was illegal, unequal and unconstitutional.

The plaintiff contends that the tax is upon his property, to-wit, his billiard tables, and that the ordinance levying the tax is illegal and void—for the reason that it contravenes section 42 of the charter of the city of New Orleans, which is in these words : that the Common Council of the city of New Orleans shall, for the purposes of this Act, once, and not oftener, in each and every year, lay an equal and uniform tax upon all property, real and personal, in said city; but said tax, added to the Consolidated Loan Tax, and to the the special tax for payment of the annual interest on the bonds issued by the city for subscriptions to the stocks of the New Orleans, Opelousas and Great Western Railroad Company, the New Orleans, Jackson and Great Northern Railroad Company, and the Pontchartrain Railroad Company, shall not, in the aggregate, be more than one dollar and fifty cents on one hundred dollars of valuation, except in case of invasion or insurrection ; provided it be sufficient to pay the interest on the consolidated debts and railroad bonds issued by the city of New Orleans.

The plaintiff further contends, that if the tax be a license tax, in the sense of section 102 of the charter, that the ordinance levying it is likewise illegal and void—for the reason that it violates the constitutional. principle of uniformity

and equality in taxation. First, that this tax was not intended by the Common Council to be a tax on property, in the sense of section 42 of the charter, is evident from the title of the ordinance, which is " *An Ordinance to establish a uniform rate of taxes and licenses on professions, callings and other business,* and on carriages, hacks, drays, and other vehicles," as well as from the nature of the taxes assessed by the ordinance upon the various professions, trades, callings, &c., therein specially mentioned.

In the construction of ordinances, as in the interpretation of statutes, the court will ascertain and give effect to the *intent and meaning of the ordinance,* provided that the same be not contrary to law, *although the language may be ambiguous and susceptible of two different significations, one of which is against law.* Notwithstanding the language of the 34th section of the ordinance in question declares, that a tax of sixty dollars shall be assessed and collected from every keeper of a billiard table, *the whole tax being levied on each and every billiard table,* we have no doubt that the *intention* of the Common Council was *to impose a license tax* upon the particular *calling* or *business* of keeping a billiard table, and not a property tax upon the table itself.

Second. The remaining question is, whether the license tax imposed upon keepers of billiard tables by the ordinance is equal and uniform.

The power conferred upon the Common Council by Article 102 of the charter to levy license taxes upon trades, professions, callings and other business carried on, is without exception or limitation ; and *in the exercise of this power* it is necessary to determine *what is a trade, profession, calling* or *other business carried on,* and the determination of these matters, *previous to the assessment of the tax,* has been left by the charter to the wisdom and discretion of the Common Council.

In the ordinance in question, the Common Council have determined that every person having more than *one shop,* or *store,* or *other establishment,* or who shall exercise or follow more than *one profession, trade, calling* or *business,* shall *pay the tax upon each separately.* Sec. 73 of the ordinance. And have also determined that the keeping of each and every billiard table *constitutes a separate* and *distinct business* subject to a license tax. Hence it follows, that as the keeping of *each billiard table,* in the sense of the ordinance, *is a separate business,* subject to a tax of sixty dollars, and no more, that the tax is equal and uniform upon all persons engaged in that kind of business, *as much so as the license tax upon merchants having separate stores or establishments.*

It is, therefore, ordered adjudged and decreed, that the judgment be avoided and reversed, and that there be judgment in favor of the defendant, with costs in both courts.

*P. E. Bonford* and *J. Livingston,* for re-hearing, argued :

The question in this case is one of construction, and its solution depends upon the proper application of principles which have been repeatedly recognized as controlling the subject.

The city of New Orleans derives its power of taxation from legislative grant. As was said of the corresponding power in the late general council of the city, the authority exercised by it in levying taxes, is derived from a special grant of power, and there is no warrant for extending this power beyond the objects specified. 4 An. 408.

The grant under which the city now exercises the right of taxation, is embodied in the Act of 1856, amending the Act consolidating the city of New Orleans. That Act provides for the taxation of *property* and the taxation of *persons.* The 36th, 38th and 42d sections determine the extent, and provides for the manner of levying taxes upon property. The 102d section gives the authority and provides the manner of taxing persons.

Has this grant of the right to levy the personal tax conferred by section 102, been exceeded in the present instance, by the municipal authorities? This question has been solved by the decision of the court in favor of the city; but in so doing, it is submitted with all due respect, that the court has not allowed sufficient weight to several considerations which have an important bearing upon the controversy.

The particular manner in which the Legislature has authorized this personal tax to be laid, is in the shape of licenses on trades, professions, callings and other business.

No form of tax can be devised more strictly personal, than that of the license to pursue a particular trade, profession or calling.

It acts only on actual residents within the territorial limits of the taxing power, and is impotent by reason of this personal nature of the tax, to affect the interests of absentees in the occupation or business carried on within those limits.

It is so exclusively personal, that if he to whom the license has been granted should die, the right is not transmitted to his heir, to use it during the unexpired period. Neither can it be transferred to another by sale or otherwise, not even as an appurtenance to the business for which the license was taken out.

It is levied without reference to the amout of capital engaged, of property employed, or of revenue derived from the particular occupation or calling, which is the subject of the license. Thus the recently admitted attorney whose income barely reaches hundreds, pays the same license as the long established counsellor, whose professional emoluments are measured by thousands; and so one merchant with limited capital and stock, contributes precisely the same amount to the treasury, on receiving his license, as another whose business and property may be an hundred fold greater.

This distinguishing feature of the license was not lost sight of by the Legislature, when it vested the power in the city to raise a portion of its revenues by this means. It was distinctly provided, that the tax was not to be construed to be a tax on property.

But in the ordinance complained of, the license which every billard table keeper is required to procure, as a condition precedent to the exercise of his calling, loses all the characteristics of a license or personal tax, and becomes *in terms*, as it is in fact, a tax on property.

For the 34th section provides that the whole tax of sixty dollars shall be " *levied* on each and every billiard table." This is in as plain terms as language can express the idea, a tax upon the thing. upon property, possessing the peculiarity of the property tax; which is, that it increases in amount according to the quantity of the property employed, and wanting, consequently, in the distinguishing feature of the license or personal tax, which is, that it should be a sum fixed, not variable according to the amount or value of the property used in the calling or business licensed.

This fatal antagonism as it would seem to the undersigned, between the idea of a license and the assessment in this particular case, is reconciled by the court, on the hypothesis that the Legislature has vested in the municipal authorities, the exclusive right of determining what are trades, professions and callings, within the meaning of the 102d section; a right which it is supposed they have exercised with respect to the billiard table tax, by holding every billiard table keeper to pursue a separate and distinct occupation as to each and every table he may have under the same roof or in the same room. The language of the court is, " the power conferred upon the Common Council by Art. 102 of the Charter, to levy license taxes upon trades, professions, callings, and other business carried on, is without exception or limitation; and in the exercise of this power, it is necessary to determine what is a trade, profession, calling, or other business carried on, and *the determination of these matters previous to the assessment of the taxes, has been left by the Charter to the wisdom and discretion of the Common Council.*

The Act of 1856 has been examined with care, for the purpose of ascertaining upon which of its provisions the court has formed its conviction, that the Legislature has either in express terms or by limitation, delegated to the city this unusual power of fixing, by its own interpretation, the nature and extent of the grant conferred upon it. Has it been left to the Common Council to decide as in the last resort, what is a trade, profession or calling; or was not the use of words having a known, definite and well ascertained meaning, intended to limit the grantee to the subjects fairly included within the definition of the terms employed?

We hold the latter of these propositions to be indisputably the true one. As was said in the place in 4th Annual already quoted, the right of taxation is derived from special grant, and there is no warrant for extending it beyond the object specified. What these objects are, is a question like every other question regarding the legislative will—purely of judicial construction. To hold that this power of interpretation, and of consequent extension of the grant, is vested in the grantee, is, it is respectfully submitted, to destroy all the safe guards which the Legislature of the State has so wisely enacted, to anticipate and to prevent the abuses growing out of an irresponsible and unlimited power of taxation.

The jurisprudence of this court abounds in instances of its interference to restrain the abuses of the taxing power. It had always proceeded upon the assumption, that the power is a delegated one, and that the grant was to be construed strictly. In 1851, it refused to sanction the interpretation which the municipal authorities placed upon the legislative grant, and it held that the right to tax capital was not included in the general right to tax personal estate ; and yet with such a canon of interpretation as the court seems to recognize in the present case, the counsel could have triumphantly insisted, that the right of determining what constituted personal estate was left entirely to their wisdom and discretion, and was not a proper subject of judicial inquiry or determination.

Undoubtedly, if this exclusive right of deciding what the Legislature meant by trades, professions and callings, belong to the Common Council, the exercise of this right, however extravagant, would not be the subject of review, and the plaintiff would be without remedy. But the undersigned are not without hope in view of the serious evils which may ensue from the recognition of this right, that the court will pause before it yields its final sanction to this doctrine. In the hands of a body disposed to extend its power of taxation, or to disregard the restraints to which it is subject, it would be a facile means of increasing the burdens of the citizens, without measure and without control. The sale of every package of merchandise, the call of every new patient, might be created into a distinct and separate occupation, and made the occasion of exacting a separate license. The collection of one's own income might thus be created into a trade, profession or calling, and the tax demanded for its pursuit. These may be extreme cases, but they afford a fair means of testing the soundness of the principle which could possibly result in such consequences.

If, then, it does not belong to the Common Council to determine without appeal, what subjects are included in the language of the 102d section of the city charter, we are thrown back upon the ordinary sources of interpretation, for the purpose of fixing the true limits of the power it vests in the city ; and in this view, the decision of this cause ought not to present serious difficulty ; because we have but to appeal to the common understanding of men upon these matters, to justify us in saying that the keeper of a billard saloon is considered to pursue but one occupation, whether he has two or a dozen tables in his rooms. No one would speak of such a power as multiplying his pursuits or occupations upon each addition which the wants of his customers or his own enterprise, might induce him to make. With more propriety might the grocer be considered as pursuing different occupations with respect to the infinite variety of articles he vends, and be required to increase the number of his licenses with every new article he adds to his stock.

These views are fully supported by the decision in the case of the *Police Jury* v. *Nougues*, 11 An. 739 ; a case quoted in the original brief, though not noticed in the opinion of the court. The analogy between that case and the present, seems to the undersigned to be so striking, that the court will pardon them for again calling its attention to the identity of the question then discussed and decided, with that now before the court.

The Police Jury of the parish of Orleans had imposed a tax or license upon all dairymen carrying on their business within certain limits ; the amount of tax being two dollars for every cow. It is true the tax was liable to the objection which does not exist here ; that it was not uniform, inasmuch as it was not levied upon *all* dairymen in the parish, but only upon those pursuing their occupation in a limited district of the parish. But the court will observe that with respect to the point, whether what was there called a license or tax on the person, was not in disguise a tax on property ; the two cases are absolutely undistinguishable. There, as here, the right to tax persons pursuing any occupation, trade or profession, was held to be resident in the Police Jury. There each and

every dairyman within the limits, was taxed two dollars for each and every cow. Every keeper of a billiard table is taxed sixty-five dollars, the tax being *levied on each and every billiard table.* It was the circumstance that the tax was levied on the property, though in the shape of a license to the person, which induced the court to consider it, notwithstanding its name, to be a property and not a personal tax. The same reason should prevail here to induce the court to say that while *professing* to tax the occupation, the ordinance really imposes a tax upon billiard tables.

The change of legislation effected by the Act of 1856, may not be without its influence upon the question. The Charter of 1853, gave the city specially the right of imposing an uniform rate of taxes upon all billard tables ; the Charter of 1856 took away this privilege, and placed billiard tables upon the same footing as all other personal property. It is not to be supposed that this change was made without object or motive ; but under the operation of the *decision* in this case, it will be entirely ineffectual, since precisely the same result is attained, by the mode in which the personal tax on the calling of the billiard table keeper is permitted to be levied.

Re-hearing overruled.

VOORHIES, J., absent.