162 So. 777

**STATE** ex rel. PORTERIE et al. v. H. L. HUNT, Inc.

No. 33450.

July 1, 1935.

Gaston L. Porterie, Atty. Gen., and Justin C. Daspit, Fred. A. Blanche, and E. L. Richardson, Sp. Asst. Attys. Gen., for appellant.

P. S. Gaharan, Jr., of Jena, for appellee.

ROGERS, Justice.

This suit involves the constitutionality of Act No. 6 of 1932, levying an excise, license, or privilege tax on the business of manufacturing or generating, selling, or using electricity for heat, light, or power. The district court held that the statute was unconstitutional and rejected plaintiff's demand. Plaintiff appealed.

The defendant, H. L. Hunt, Incorporated, an Arkansas corporation, was engaged in business in the parish of La Salle, La., from August 1, 1932, up to and including July 31, 1934. Defendant's business consisted of operating and pumping oil wells and transporting and handling oil in said parish and state. In the conduct of its business during the fiscal years ending July 1, 1933, and July 31, 1934, the defendant corporation used electrical and mechanical power of more than 10 horsepower, and, in the creation of the power, the defendant corporation operated machines or apparatus known as "prime movers," of a total capacity of 1,050 horsepower.

Ignoring the provisions of Act No. 6 of 1932, the defendant failed to make a return to the supervisor of public accounts showing the total horsepower of the machines or apparatus operated by it during the fiscal year ending July 31, 1933. Defendant filed a return for the fiscal year ending July 31, 1934, and attached to the return a check covering one-half of the amount of the tax due, in the belief, evidently, that the amendment to section 3, Act No. 6 of 1932 (Act No. 32 of 1934, § 1), reducing the tax from $1 to 50 cents per horsepower, became effective during the fiscal year for which the return was made. The supervisor of public accounts made a demand on defendant for the balance due on the tax for the year ending July 31, 1934, and also for a report showing the total horsepower of the machinery

or apparatus operated by defendant during the fiscal year ending July 31, 1933. Defendant refused to comply with the demands, and the supervisor of public accounts executed under oath a statement of the taxes due by defendant. This statement was filed in the mortgage records of the parish of La Salle to operate as a lien against defendant's property.

The state of Louisiana, through its Attorney General and its supervisor of public accounts, then filed this suit to collect $1,575, as the amount of the tax due, with penalties, interest, and attorney's fees. The suit is predicated on section 3 of Act No. 6 of 1932.

Section 1 of Act No. 6 of 1932 levies an annual excise, license, or privilege tax on the business of manufacturing or generating electricity for heat, light, or power. Section 2 levies the tax on the business of selling electricity for the purposes stated. Section 3 levies the tax on any business in which electrical or mechanical power of more than 10 horsepower is used. The taxes levied under sections 1 and 2 are fixed at 2 per cent. per annum of the gross receipts of the sales. Under section 3 the rate of taxation is fixed at $1 per annum for each horsepower of capacity of the machinery or apparatus known as the "prime mover" or "prime movers" operated by the taxpayer. The taxes authorized by the statute are in addition to all other taxes now imposed by law.

The defendant attacks the constitutionality of Act No. 6 of 1932 on five grounds, viz.:

(1) That the tax levied under section 3 is a property tax levied on property which has borne the maximum amount of taxation permitted under article 10, § 3, of the State Constitution.

(2) That the tax, so far as it applies to defendant, is violative of section 21 of article 10 of the State Constitution, prohibiting the levying of any tax other than a severance tax on oil and gas rights.

(3) That the tax is violative of section 8 of article 10 of the State Constitution, in that the tax is arbitrarily fixed and is neither classified, graduated, nor progressive.

(4) That the statute is violative of section 1 of article 10 of the State Constitution (as amended, see Act No. 162 of 1926), requiring that taxation shall be uniform, and of the Fourteenth Amendment of the Federal Constitution, in that it denies defendant the equal protection of the law.

(5) That the statute is violative of section 2 of article 1 of the State Constitution and of the Fourteenth Amendment to the Federal Constitution, in that it deprives defendant of its property without due process of law.

We shall discuss and dispose of defendant's contentions in the order of their statement.

 1. Under this ground of attack on the statute, defendant complains that the tax in dispute is a property tax, not an excise or privilege tax, and that as a property tax it exceeds the limit of 5¼ mills, fixed by section 3 of article 10 of the State Constitu-

tion, viz.: "The rate of State taxation on property for all purposes shall not exceed, in any one year, five and one-quarter mills on the dollar of its assessed value."

Defendant argues that, notwithstanding the declaration in the statute that the tax is levied on any business or occupation in which mechanical or electrical machines of more than 10 horsepower are used, the tax in realty is not upon the business or occupation of the user of the machines, but is a di-rect tax upon the only thing of value in the machines, which is their use; that, if it were not for the use to which they are put, the machines would be without any pecuniary value; that it is the value resulting from such use that determines their assessment value for the purpose of property taxation.

The answer to defendant's complaint and argument is that the constitutional limit of taxation to $5\frac{1}{4}$ mills on the dollar applies only to the ad valorem tax that is collected annually on all taxable property according to its assessed value. The tax is levied on the right of ownership. Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433; Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341. The tax is levied each year based on the assessed value of the property, irrespective of whether the property is used or not.

The tax levied under Act No. 6 of 1932 is not based on the ownership and the assessed value of the machines or apparatus described in the act. It is based on their use in the user's business, whether he is the owner or not, and irrespective of their assessed value. Under the statute, no tax is due by the owner of the machines or apparatus described therein unless they are used in the conduct of his business. But the owner's nonuse of the machines or apparatus does not exempt him from the payment of an ad valorem or property tax thereon.

Act No. 6 of 1932 designates the tax levied under its provisions as an excise, license, or privilege tax. What characterizes the tax in dispute as a license or privilege tax is that it is collectible only from those who in the conduct of their businesses or occupations use electrical or mechanical power of more than 10 horsepower. The measure of the tax is the horsepower capacity, exceeding 10, of the machines or apparatus used in generating the electrical or mechanical power used in the taxpayer's business. Ownership is immaterial. The tax is not based on ownership. It is not levied or collectible from the owner of the property unless he uses it in the conduct of his business and then only in proportion to the horsepower capacity of the property.

The distinction between a property tax and an excise tax is set forth in Cooley on Taxation (4th Ed.) vol. 1, p. 131, § 45, as follows, viz.:

"Generally the answer to the question whether a particular tax is a property tax or an excise tax is so apparent that there is no room for argument; but in many phases the question has been the subject of much litigation, especially in regard to whether

a tax on a corporation is an excise tax or a property tax. If the tax is directly on property itself, the tax is a property tax; but a tax is an excise tax rather than a property tax where it is not a tax on property as such, but upon certain kinds of property, having reference to their origin and their intended use. Another thing to be noted, it has been said, is that the obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking."

In the same volume and section of his work, the learned author gives as some examples of taxes which have been construed as excise taxes rather than as property taxes, inheritance taxes, taxes upon transfers of stock, taxes on the privilege of recording mortgages, taxes on the sale of gasoline, taxes on the use of vehicles.

The plaintiff cites three cases in our jurisprudence which seem to be particularly appropriate to the issue involved in this case. The cited cases are: Merriam v. City of New Orleans, 14 La. Ann. 318; Hodgson v. City of New Orleans, 21 La. Ann. 301, and State v. Heymann, 178 La. 479, 151 So. 901.

In the Merriam Case the plaintiff attacked as unconstitutional a municipal ordinance levying a license tax on every keeper of a billiard table; the amount of the tax being measured by the number of tables.

Plaintiff contended that the tax was a property tax on the tables and not a license or privilege tax for the use of the tables in the taxpayer's business. But the court held the contention was untenable; that the intention of the municipality was to impose a license tax upon the particular calling or business of keeping a billiard table, and not a property tax upon the table itself.

In the Hodgson Case, in which the Merriam Case was cited and quoted with approval, the municipal ordinance which was attacked as unconstitutional levied a tax on "every keeper of a warehouse where produce, goods, wares or merchandise are received on storage, * * * one hundred dollars for each and every warehouse." The court held that the tax was a license tax imposed upon the particular calling or business or keeping a warehouse and not a tax upon the warehouse itself.

The Heymann Case involved section 37 of Act No. 190 of 1932, which levied a license tax on the business of operating an office building. The court held that the tax was not within the limitation of section 3 of article 10 of the State Constitution; that the tax was not a direct tax upon the property but a license tax upon the business in which the property was used or employed.

In the Merriam, Hodgson, and Heymann Cases it was the use of the property in the taxpayer's business that fixed his tax liability for the privilege of so using the property. The case at bar cannot be distinguished in principle from those cases. In this

case also it is the use of the property in his business that fixes the user's tax liability for the privilege of conducting the business.

The defendant cites the cases of Dawson, Attorney General, v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, and Thompson, Auditor, v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674. The cases were also cited and distinguished from the case presented in Lionel's Cigar Store v. McFarland, supra.

We think the nature and character of the tax in dispute here easily distinguishes it from the whisky tax which was held to be a property tax in the Kentucky Distilleries & Warehouse Company Case. Moreover, the Supreme Court of the United States declared in that case that the question of whether a tax is an occupation tax or a property tax is one of local law so that a decision of it by the highest court of a state will be accepted as conclusive. Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, page 291, 41 S. Ct. 272, 65 L. Ed. page 645.

In the Thompson v. McLeod Case the Supreme Court of Mississippi, by a divided court with a strong dissenting opinion filed by one of the dissenting justices, went rather far in holding that a tax of one-fourth of one cent each year for each cup or box levied on the business of extracting turpentine from standing trees was a property tax and not an excise tax. But the decision apparently was based on the finding of the court that the alleged tax debtor in taking the crude gum from his trees was not directly engaged in any kind of mercantile business, but was upon his own property pursuing a natural right; that the privilege taxed was not that of selling the gum of the tree, but the privilege or right of the owner or lessee to extract turpentine from standing trees.

On the other hand, it has been held in Texas that the tax on a certain percentage of the market value of the gross products of oil wells was a tax, "not upon the gross products of the oil wells, but upon the occupation of owning, controlling, or managing oil wells producing oil; and the amount of the tax is measured by a percentage of the market value of the gross products." Producers' Oil Co. v. Stephens, 44 Tex. Civ. App. 327, 99 S. W. 157, 158. And in Alabama it has been held that an additional tax of 3 cents per barrel laid upon all oysters canned, packed, shipped, or sold in and from the state, and on all oysters caught and taken from the public reefs and private bedding grounds for packing, canning, shipping, or for sale was not a property tax, but a charge or imposition upon the business or act of marketing oysters. State v. Parker, 5 Ala. App. 231, 59 So. 741.

We think the Thompson v. McLeod Case is distinguishable from the present case. But, if we are wrong in this, we must nevertheless decline to follow it. The decision was by a divided court, and apparently is contrary to the jurisprudence of this state.

Our conclusion is that the tax levied under Act No. 6 of 1932 is an excise, license, or privilege tax and not a property tax, and that the tax is not within the limitation placed upon the Legislature by section 3 of article 10 of the State Constitution.

■ 2. Defendant's next complaint is that the tax in dispute is violative of section 21 of article 10 of the State Constitution. The constitutional provision which defendant invokes reads in part as follows, viz.: "Taxes may bè levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed. No severance tax shall be levied by any parish or other local subdivision of the state.

"No further or additional tax or license shall be levied or imposed upon oil or gas leases or rights, nor shall any additional value be added to the assessment of land, by reason of the presence of oil or gas therein or their production therefrom."

Defendant argues that under the constitutional provision the tax in dispute cannot be levied on those who, like defendant, are engaged in the business of severing natural resources from the soil. The record shows that defendant is engaged in the business of operating and pumping oil wells and in transporting and handling oil in this state.

Section 21 of article 10 of the State Constitution authorizes the Legislature to levy a license tax on the privilege of severing natural resources from the soil or water. And the Legislature has levied the tax authorized by the constitutional provision. See Act No. 140 of 1922, as amended and superseded by Act No. 24 of the Second Extraordinary Session for the year 1935. This court has held that the tax levied by Act No. 140 of 1922 was a tax levied on the privilege of severing natural resources from the soil, Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433.

The constitutional provision authorizing the Legislature to levy a severance tax prohibits the levying of any further license or tax upon oil or gas leases or rights. No attempt is made in Act No. 6 of 1932 to levy an additional license or tax upon oil or gas leases or rights. All that the statute does is to levy a tax on the privilege of doing business in the state and to fix the measure or quantum of the tax according to the horsepower capacity of the machinery or apparatus used in the conduct of the business.

■ 3. Defendant also complains that the tax in dispute is violative of section 8 of article 10 of the State Constitution, which provides that "license taxes may be classified, graduated or progressive."

The defendant's argument is that the tax is neither classified, graduated, nor progressive, because it is based on the original horsepower rating of the machines and apparatus described in the statute, without any allowance for depreciation.

Assuming that the constitutional provision means that license taxes must be classified, graduated, or progressive, any reasonable method of graduation will suffice. State v. Heymann, 178 La. 479, 151 So. 901. Section 3 of Act No. 6 of 1932 designates or classifies those who are amenable to the tax. The statute levies the tax only on those who in the conduct of their business or occupation at any time use electrical or mechanical power of more than ten horsepower. The statute also graduates the amount of the tax levied. The measure or quantum of the tax is determined by the total horsepower capacity of the machinery or apparatus used in the conduct of the business. The greater the horsepower capacity of the property used, the greater the tax. The possible depreciation in the property used cannot in any manner affect the legality of the tax.

4. Defendant further complains that section 3 of Act No. 6 of 1932 violates section 1 of article 10 of the State Constitution requiring that taxation shall be uniform on the same class of property throughout the territorial limits of the authority levying the tax, and that it denies the equal protection of the law guaranteed by the Fourteenth Amendment of the Federal Constitution, in that it fails to exempt from taxation the "stand-by" engines used by those generating their own power while exempting the "stand-by" engines of those who purchase their power from the persons, firms, corporations, or associations subject to the tax imposed by sections 1 and 2 of the statute.

The pertinent portion of section 3 of Act No. 6 of 1932 reads as follows, viz.: "Provided that any user of power securing all or any part of the power required in the conduct of the business or occupation of such user from a person, firm, corporation or association of persons subject to the tax imposed by Section 1 or Section 2 of this act, shall not be liable for the tax imposed by this Section 3, or for a greater tax under this Section 3, as the case may be, because of the employment of stand-by power facilities by such user during periods of failure of the supply of purchased power. * * *"

The requirement of section 1 of article 10 of the State Constitution that all taxes shall be uniform applies only to property taxes and not to license taxes levied by the Legislature under the authority of section 8 of article 10 of the Constitution. State v. American Ry. Express Co., 159 La. 1001, 106 So. 544.

However, we fail to see wherein the statutory provision hereinabove quoted violates either section 1 of article 10 of the State Constitution or the Fourteenth Amendment to the Federal Constitution. If a machine is not used in the owner's business, whether it be a stand-by machine or not, it is not subject to the tax. Under the provisions of the statute, all taxpayers occupying the same status or falling into the same class are treated alike. The statute appears to

separate the taxpayers into three distinct classes, namely: Those engaged in the business of manufacturing or generating electricity for heat, light, and power. Section 1. Those who are engaged in the business of selling electricity not manufactured or generated by them, for heat, light, or power. Section 2. And those who produce the electrical or mechanical power which they use in the conduct of their own businesses or occupations. Section 3. No tax appears to be directly levied on those who use in their business the electricity manufactured or sold by those subject to the tax levied under sections 1 and 2.

The placing of all those who generate their own power in a separate class is not arbitrary or unreasonable, and we think it was within the sound discretion of the Legislature to make such a classification. The failure to permit the employment of stand-by facilities free of taxation by such users, while providing that a different class of persons not directly taxed under the statute (section 3) "shall not be liable for the tax imposed by this Section 3, or for a greater tax under this Section 3, as the case may be," because of the employment of stand-by power facilities by such persons during periods of failure of the supply of purchased power, does not arbitrarily discriminate against or deny the equal protection of the law to the distinct class of taxpayers created by section 3 of the statute.

5. Defendant's remaining complaint is that Act No. 6 of 1932 violates the due process clauses of both Federal and State Constitutions. Defendant contends that all phases of the statute relative to the levy, determination of the amount and collection of the tax considered together constitute a denial of due process of law. We do not think the complaint is well founded.

The tax in dispute is levied in addition to all other taxes. It is levied as an excise, license, or privilege tax on all businesses where, in the conduct of the business, electrical or mechanical power of more than 10 horsepower is generated. The tax is measured by the horsepower capacity of the machinery or apparatus used in generating the power. The rate is $1 per horsepower.

Section 6 of the statute requires those coming under the provisions of the statute to file a return with the supervisor of public accounts at the end of each fiscal year, showing the amount of horsepower capacity of the machinery and apparatus used during the year. Under the statute the fiscal year ends July 31st of each year, and the taxpayer is allowed until September 1st, or a period of thirty days, within which to file his return. This return must contain the taxpayer's own calculation as to the horsepower capacity of the machinery or apparatus used by him in the conduct of his business.

The statute specifically designates the date on which the fiscal year ends, prescribes the period within which the taxpayer must file his return, and permits him

to fix the measure of the tax by directing him to set forth in his return the horsepower· capacity of the machinery or apparatus used by him during the year. The taxpayer is thus given an opportunity to be heard, and, if he fails to avail himself of the opportunity, he is considered as having waived it. Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105. If the return is not made, the supervisor of public accounts is to make a return or cause it to be made, upon such information as the supervisor may be able to obtain, assess the tax due thereon, and add a penalty of 25 per cent. to the amount of the tax for the failure of the taxpayer to make the return. If the taxpayer does as required, there is nothing to be heard about. The tax being based on a fixed rate per horsepower, there is nothing the taxpayer can do which can affect the amount of the tax. He reports the total capacity of horsepower used in his business, and the statute establishes the amount of the tax to be collected from him. The provision in the statute imposing a penalty for the failure of a taxpayer to report is for his failure to do his duty. In that event, his chances to be heard have gone by. Pullman Co. v. Knott, supra.

Our conclusion is that Act No. 6 of 1932 provides a well-established and constitutional method of levying the tax, arriving at the amount due and for collecting it from the taxpayer.

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of plaintiff the state of Louisiana, and against defendant, H. L. Hunt, Incorporated, in the sum of $1,050, with 25 per cent. thereon as penalty, 10 per cent. on the amount of said principal and penalty as attorney's fees, and 5 per cent. per annum interest on the total amount from judicial demand until paid. It is further ordered that the said plaintiff have judgment against the said defendant in the further sum of $1,050, less a credit of $525, with 25 per cent. thereon as penalty, 10 per cent. on the principal amount, plus the penalty as attorney's fees, together with 5 per cent. per annum interest on the total amount from judicial demand until paid. All costs of suit to be paid by the defendant.

It is further ordered that the lien filed in the mortgage records of the parish of La Salle in Book 15, folio 233, to secure plaintiff's claim, be recognized and maintained, and that the sheriff of the parish of La Salle be authorized and directed to sell the property and assets of the defendant situated in the parish of La Salle according to law, and that the proceeds thereof be used to pay the amount of plaintiff's judgment over and above all other creditors of defendant.

ODOM, J., dissents.