46 So.2d 113 (1950)
217 La. 160
INTERSTATE OIL PIPE LINE CO.
v.
GUILBEAU, Sheriff.
No. 39226.
Supreme Court of Louisiana.
March 20, 1950.
Rehearing Denied April 24, 1950.
Arthur M. Curtis, Baton Rouge, for plaintiff-appellant.
Wesley H. Clanton, Eunice, Walter M. Hunter, Alexandria, for defendant-appellee.
*114 LE BLANC, Justice.
This is a suit to recover the sum of $2,064.69, the amount of certain taxes that were paid under protest to Clayton J. Guilbeau, Sheriff and Ex-Officio Tax Collector of the Parish of St. Landry, in his capacity as such, for the Red River, Atchafalaya and Bayou Boeuf Levee District, for the year 1944, on property belonging to plaintiff, Interstate Oil Pipe Line Company, which was assessed for that year against its predecessor, Standard Oil Company of Louisiana.
The property involved is situated in that part of St. Landry Parish lying west of the Atchafalaya River Main Levee and east of the west guide levee of the West Atchafalaya Floodway as now established extending from the Avoyelles Parish Line on the north to Bayou Courtableau on the south. It was formerly owned by the Standard Oil Company of Louisiana and was acquired by plaintiff in an act of exchange executed on December 19, 1944, effective as of December 31, 1944. On December 28, 1944, Standard Oil Company of Louisiana paid all taxes assessed against it in the Parish of St. Landry in which was included the tax under contest. In compliance with the provisions of Act No. 330 of 1938, it advised the Tax Collector, by letter, that the amount of tax was being paid under protest and gave notice as required of its intention to file suit for the recovery of the amount so paid within thirty days. As assignee, under the act of exchange of December 28, 1944, of all the properties, assets and rights of the Standard Oil Company of Louisiana, plaintiff instituted this suit in accordance with the notice given, on January 22, 1945.
The suit is based on certain language found in Act. No. 260 of 1938 which redefines the limits of the Red River Atchafalaya and Bayou Boeuf Levee District which was created by Act No. 46 of 1892. The pertinent language is as follows: "Provided, however, that there shall be excluded from the limits of said levee district the following: All that portion of St. Landry Parish lying west of the Atchafalaya River main levee and east of the west guide levee of the West Atchafalaya Floodway as now established extending from the Avoyelles Parish line on the north to Bayou Courtableau on the south, with the exception of rights of way and other property belonging to railroads, pipe-lines, common carriers or other public utilities."
On the face of the proviso it would seem the intention of the Legislature was to exclude from the entire limits of the Levee District, all property within the area covered by the Atchafalaya Floodway with the exception of rights of way and other property owned by all railroads, pipe lines, and common carriers or other public utilities and situated and located within the excluded area and this, plaintiff contends, constitutes a discrimination in that its properties were assessed for taxation under the Act while other properties in the same geographical area were specifically excluded from the taxing district and were not subject to taxation by the Levee District. Consequently, plaintiff alleges that the foregoing quoted provision of Act No. 260 of 1938 is unconstitutional as being in contravention of Article 10, Section 1 of the Constitution of the State which provides that "* * *; all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, * * *" or as being in violation of the "due process" clause of Article 1, Section 2 of the State Constitution and the "due process" and "equal protection" clauses of the Fourteenth Amendment of the Federal Constitution.
The prayer of the petition is that the proviso in Act No. 260 of 1938 under attack be declared unconstitutional, null and void and of no force and effect and that the defendant Tax Collector be ordered to return to plaintiff the sum of $2,064.69 being the taxes levied on the property involved, together with interest at the rate of two per cent per annum from December 28, 1944, until paid.
The defendant filed various pleas and exceptions which were either overruled or referred to the merits. Before he filed his answer, the Red River, Atchafalaya and Bayou Boeuf Levee Board intervened to join the defendant in the pleas of estoppel *115 and prescription which he had urged. Under reservation of those pleas and the other exceptions, defendant filed his answer in which the question of constitutionality raised was put at issue. Plaintiff then filed its answer to the petition of intervention of the Levee Board in which it placed at issue the pleas of estoppel and of prescription and the case was then tried and submitted on the merits on an agreed stipulation of facts and on the testimony of two witnesses, G. M. McCuin, for the plaintiff and Harry Henderson, Jr., for the defendant and intervenor.
The district judge handed down a lengthy written opinion in which he concluded that the provision of Act No. 260 of 1938, the constitutionality of which was attacked, was constitutional on its face and he accordingly rendered judgment rejecting the plaintiff's demand and dismissing its suit at its costs. The appeal is from that judgment.
The important, and indeed the controlling, question in the case is the one of constitutionality, for, if the provision of the law that is contested is constitutional, the assessment of the properties for taxes and the collection of those taxes was a valid exercise of his powers by the tax collector and it becomes unnecessary to consider and pass on the secondary issues of estoppel and of prescription that are presented.
It does not seem to be disputed that the contested tax being a property or an advalorem tax, the constitutional requirement of uniformity as provided for in Section 1 of Article 10 of the State Constitution applies. That is the law as appears from the decisions of this Court and particularly from the case of State ex rel. Porterie et al. v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 781, 9 A.L.R. 9, wherein it is stated: "The requirement of section 1 of article 10 of the State Constitution that all taxes shall be uniform applies only to property taxes and not to license taxes levied by the Legislature under the authority of section 8 of article 10 of the Constitution. State v. American Ry. Express Co., 159 La. 1001, 106 So. 544."
In its original petition plaintiff complained that it owned certain property in that area of the levee district which had been excluded for taxing purposes, which had been subjected to taxation by the said district, "whereas other property of the same kind and class now owned by [it] or other public utilities and situated within the same geographical limits, is not included within the limits of the said Levee District and is not subjected to taxation by the said District." In compliance with an order granted on an exception of vagueness, the petition was amended in respect to this allegation by additionally pleading that the discrimination complained of was not in regard to "the kind of character of such properties, or the uses to which they are put, but in the nature of the business in which petitioner is engaged, as opposed to the nature of the business in which other property owners are engaged."
Stated in a simpler form, the gravamen of the complaint is that all property of others, of whatever kind, is excepted by the proviso in Act No. 260 of 1938 whereas all property of whatever kind belonging to the plaintiff, which is a common carrier, is included for taxation and therefore the tax is assessed against it not according to the kind of property or the use to which it may be put, but simply because plaintiff is a common carrier.
Assuming that to be so, that would not ipso facto make the proviso in that statute unconstitutional. It is an elementary rule of construction in constitutional law that all statutory enactments are presumed to be constitutional. Whilst this presumption is not conclusive it nevertheless attaches until it is overcome by the one who challenges the validity of the statute on constitutional grounds. See Vol. 16, Corpus Juris Secundum, Verbo, Constitutional Law, § 99, p. 250. In the same volume at page 275 it is stated that "the presumption in favor of constitutionality is especially strong in the case of statutes enacted to promote a public purpose, such as, for example, statutes relating to taxation," and it also applies to statutes which are attacked on grounds of discrimination or unreasonable and arbitrary classification. From the same volume at p. 282, § 100(c), we quote the following: "It will *116 be presumed that a statutory classification effecting a difference in treatment between different subjects or classes is not invalid as unreasonable or discriminatory, and that in so classifying, the legislature acted from a proper motive, with full knowledge of existing conditions. So, it will be presumed that the legislature acted advisedly, in response to a reasonable basis for classification, and that its differentiation between subjects is based on adequate grounds, if any such basis can reasonably be said to exist."
Further in the same volume, at page 1042, § 520, it is stated:
"While the guaranty of equal protection of the laws applies to the exercise of the state's power of taxation, and affects both persons and things, it does not deprive the states of the power to adjust their systems of taxation in all proper and reasonable ways in accordance with their own ideas of public policy; nor does it require absolute equality, the requirement being satisfied if the evident intent and general operation of the tax legislation is to adjust the burden with a fair and reasonable degree of equality. Accordingly, the constitution does not prohibit reasonable classification for purposes of taxation so long as the classification rests on a difference having a reasonable relation to the subject of the particular legislation so that all persons similarly circumstanced shall be treated alike, as determined from the practical operation of the statute. * * *
"To be unconstitutional, the classification must be manifestly arbitrary and unreasonable, and not possibly so. Since taxation is so largely a question of policy, the legislature possesses the largest measure of discretion in these matters; and the courts will not declare a tax statute void as a violation of the equal protection guaranty so long as the classification or selection made by it is based on a reason, even though in their opinion the reason is a poor one and the statute itself is unjust, the test being good faith, not wisdom."
The dominant thought and in fact the determining factor in the matter of classification is that of reasonableness as opposed to arbitrariness, whim or caprice. This court had the question before it on more than one occasion and invariably followed the rule of reasonableness which seems to be universal in its application. In the case of Matthews et al. v. Conway et al., 179 La. 875, 155 So. 255, 257, it found that in imposing a tax on vehicles, the discrimination made between the kinds and uses of the vehicles, was not arbitrary, but was based on sound reason and it stated: "That is all that is demanded by the equal protection clauseand nothing more could be demanded by the due process clauseof the Fourteenth Amendment of the Constitution of the United States. The case is governed by the simple rule that where a tax affects alike all persons similarly occupied, and all property in the same classification, there is no denial of the equal protection of the law."
There can be no doubt then that the legislature did not violate any constitutional provision by the mere fact of selecting certain classes of property or the property of certain classes for taxation in the proviso found in Act No. 260 of 1938 if it had a sound reason for doing so. The reason it had can readily be detected from the Act itself for we note in paragraph 4 of Section 1 that the purposes of the levee district "shall be the raising by taxation or otherwise a revenue to protect the lands therein from inundation or damage by floods or rain water; said taxation to be levied on the lands and other property in the said district subject to taxation for levee purposes under Article XVI of the Constitution and laws of this State." The article of the Constitution referred to provides for the maintenance of a levee system and authorizes the levy of an annual tax not to exceed one-half mill "on all taxable property throughout the State, to be applied exclusively to the maintenance and repair of levees."
From the language of the proviso excluding a certain area from the limits of the said levee district, it is apparent that the purpose was to relieve from the burden of taxation as was otherwise required in the district, the land and property situated in the West Atchafalaya Spillway basin *117 and which would derive no benefit from the levee system which the levee district had to maintain. It is common knowledge that in the use which was to be made of the spillway, lands and other property situated therein might well be rendered valueless and would no longer derive the benefit intended under the Act. However, in excluding the whole area, the legislature, in its wisdom, concluded that certain classes of property, such as that of railroads, pipelines, common carriers or other public utilities would not suffer the same fate, or at least not to the same extent as other property and therefore all of that property should be made to bear the burden of taxation. That, in our opinion, was a reasonable and legitimate exercise of its taxing power by the legislature and was by no means so arbitrary as to make the classification invalid and unconstitutional.
We might well stop here and say that, the act being constitutional on its face, that disposes of this lawsuit. But from the testimony of plaintiff's witness, McCuin, its property tax agent, another contention appears to have developed for, in answer to specific questions, he states that the complaint is that plaintiff "was discriminated against in that some of its property was taxed and some wasn't."
It would seem that in assessing plaintiff's property the assessor looked to the purpose for which it might be used and not to its kind and character. In other words, he assessed the property that was used for common carrier purposes and left off of the assessment roll that which was not.
The contention now made may well lead to plaintiff's disadvantage as it may be that under a strict compliance with the provisions of Act No. 260 of 1938, all of its property, regardless of its use, should have been placed on the assessment roll because by its wording, the proviso, excluding from the levee district that property which was situated in the spillway area, specifically excepted from the exclusion the "rights of way and other property belonging to railroads, pipe-lines, common carriers or other public utilities" and in 1944, when the Standard Oil Company owned these properties, it admittedly was a common carrier. (Italics ours.)
Assuming however that there is some merit in this contention, we are of the opinion that that is a question which addresses itself to the way in which a law that is constitutional was administered by the official charged with its administration, and before his action can result in a violation of the "due process clause" of the Federal Constitution or the "equality" and "uniformity" clauses of the State Constitution, it must be shown that his action "was intentional, systematic, deliberate, persistent, habitual, fraudulent, and/or designed to violate fundamental constitutional principles, mere error in judgment or mistake being insufficient. The burden of showing the illegal nature of the administrative action is upon the taxpayer, for the good faith of the tax officials and the validity of their action are presumed." See 51 Am. Jur., Taxation, Sec. 170. There is no intimation that the action of the assessor in this case was of such nature as to make it result in a violation of any of the constitutional provisions referred to.
The defendant tax collector has answered the appeal asking that the judgment be amended by awarding ten per cent of the amount of the taxes paid, as attorney's fees, the same being taxable as costs under the provisions of Act No. 170 of 1898, Act No. 16 of the Second Extra Session of 1934, Act No. 23 of the Second Extra Session of 1935 and Act No. 330 of 1938. He made no such demand in the lower court however, and the issue was not otherwise presented to and adjudicated in that court. This court being one of appellate jurisdiction, we cannot, under the circumstances, entertain the demand.
For the reasons stated, the judgment appealed from is affirmed at the costs of plaintiff-appellant.
MOISE, J., takes no part.

On Application for Rehearing
PER CURIAM.
The defendant-appellee urges in application for rehearing that this court should *118 have given him a specific decree for attorney's fees. This contention is based on the proposition that under the law of this state his prayer for costs included attorney's fees. If this proposition is correct, appellee is fully protected by the judgment of this court and of the district court giving him judgment for costs as prayed for. If it is incorrect, this court properly refused to entertain his demand. In either case nothing is presented for our consideration on a rehearing.