On Rehearing.
TATE, Justice.
As more fully set forth in our original opinion herein, the issue in this declaratory judgment action against the City of Baton Rouge and its Treasurer is whether the City’s statutory requirement that gasoline retailers include the sales of gasoline and other motor fuels in computing their gross sales by which their annual local occupational license tax is measured violates the prohibition found in Article XIV, Section 24.1, La.Constitution, LSA.:
“No parish, municipality or other political subdivision, shall levy an. excise, license or privilege tax upon gasoline * * * ”[1] (Italics ours.)
In our original opinion we held that the constitutional prohibition did extend to a municipal occupational license tax measured by the sale of gasoline because such a tax, not being upon gasoline itself but upon, the activity or occupation of retailing gasoline, was by definition an excise, license,, or privilege tax.
On rehearing, conceding that the local' tax in question is an excise, license, or privilege tax relating to gasoline, the City contends that nevertheless such contested levy is not within the scope and intent of the constitutional prohibition found in Section 24.1, Article XIV, La.Constitution,, *552 which the City now admits to be ambiguous and imprecise in description.
 With exceptions and distinctions not here material, “excise taxes” are “taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges,” 1 Cooley Taxation (4th ed. 1924) 42 at p. 127, as contrasted with “property taxes” or “poll taxes” which are levied directly upon property itself or upon persons themselves. 1 Cooley, Sections 38, 39, 40, 42, 45, 46, 50. That is, as stated in our original opinion, “the terms ‘excise tax’, ‘license tax’ and ‘privilege tax’ are synonymous and are used interchangeably[2] to the extent that they are all ‘indirect taxes’ which are imposed upon the acts of persons, whereas a ‘direct tax’ is one which is imposed upon the persons themselves or upon the property owned by them.”
Properly speaking, the term “excise, license, or privilege tax upon gasoline" has no meaning, since such taxes are those which are levied upon acts or activities and not upon things (such as gasoline) themselves. It therefore becomes a proper subject of judicial inquiry to ascertain the legislative intent as to just what acts or activities relating to gasoline were or were not removed from the purview of local taxing authority by the constitutional provision in question.
For'although a court may not disregard the letter of an unambiguous law by a resort to the legislative intent (LSA-C.C. Art. 13), on the other hand when the application of a law is uncertain because of dubious or imprecise expressions therein, its true meaning may properly be ascertained by examination of its terms with reference to the legislative and constitutional intent and in their context with relation to other legislative and constitutional enactments pertaining to the same subject matter. LSA-C.C. Arts. 16, 17, 18; Mclancon v. Mizell, 216 La. 711, 44 So.2d 826; State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385; Mills v. City of Baton Rouge, 210 La. 830, 28 So.2d 447; Curatorship of Parks, 210 La. 63, 26 So.2d 289, 173 A.L.R. 1056; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; State v. Alden Mills, 202 La. 416, 12 So.2d 204; Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163.
Section 24.1 of Article XIV was first added to our Constitution, after approval *554 by the people, by Act No.- 180 of 1924. This amendment created a “Special Paving Fund for the City of New Orleans” and provided that the fund was to be derived from (a) a tax of one cent (10) per gallon “On gasoline, when sold or purchased for consumption in the Parish of Orleans” and (b) a tax “On all kerosene, or other explosives used for the generation of motive power”, both taxes “to be collected as provided by law for the collection of the State tax on gasoline or other motor fuel sold in the State of Louisiana.”[3]
This constitutional section was amended and reenacted by approval of the people of Act No. 341 of 1936, which contained further provisions regulating what was now denoted as the “Special Paving and Permanent Public Improvement Fund for the City of New Orleans”[4] to be derived from taxes (or the funding thereof) levied by the Commission Council of New Orleans (a) of two cents (20) per gallon “On gasoline, benzine, naptha and other motor fuels as defined by the laws of the State levying State taxes upon such commodities, when sold, used, consumed or purchased for consumption in the City of New Orleans,” (b) “On all kerosene”, and (c) “On all other explosives used in the generation of motive power”. This version further provided that such taxes were “to be collected in the same manner as provided by Act No. 15 of the Extra. Session of 1928”, which latter statutory enactment authorized parishes through governing bodies “to levy a tax * * * not to exceed, in any one year, one (1) cent per gallon on gasoline or other motor fuel sold, used or *556 consumed within the territorial limits of such parish.”[5]
It is of interest to note that in opinions of this Court and of the Attorney General, prior to the repeal of these versions of Section 24.1 by Act 395 of 1940 (which sets forth the present version of the constitutional provision), the type of excise tax on gasoline contemplated therein and by Act No. 15 of the Extra. Session of 1928 was referred to as a “tax on gasoline”[6] or as a “one cent per gallon tax on gasoline and motor fuel”,[7] without, the qualification that said excise tax was upon gasoline sold or consumed and not .upon the gasoline itself.
 Act 395 of 1940, when ratified by the people, repealed the earlier versions of Section 24.1 and provided the present text.[8] As previously noted, the meaning of the prohibition therein that no local government “shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power” cannot be ascertained solely *558 .by reference to the constitutional enactment because an excise, license or privilege tax is not upon a thing (gasoline) but upon some activity or occupation with respect thereto. Thus, strictly speaking, an occupational license tax is not “an excise, license or privilege tax upon gasoline”; but to end our inquiry there (as the City would have us do) we would in contravention of the presumption of validity and meaning to constitutional and legislative enactments conclude that the legislature had submitted and the people had ratified a meaningless provision, since neither can there be any other “excise, license or privilege tax upon gasoline.” Our inquiry must therefore be directed to just what excise, license or privilege taxes relating to gasoline are by the constitutional enactment prohibited to local governments; or; more precisely, to whether the constitutional prohibition includes within its orbit municipal occupational license taxes measured by the amount of gross sales which, insofar as they apply to gasoline retailers, include gross sales of gasoline.
LSA-Civil Code, Article 18 provides:
“The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.”[9]
 In determining the meaning and legislative intent of an enactment, it is proper to resort to the established policy of the legislature as disclosed by the general course of legislation relating to the subject matter of the enactment and the legislative history thereof. Melancon v. Mizell, 216 La. 711, 44 So.2d 826; Malone v. Cannon, 215 La. 939, 41 So.2d 837. The earlier versions of Section 24.1 and related legislation were concerned solely with an excise tax on gasoline and other motor fuels sold by the dealer to the consumer, which indeed was sometimes officially described as a “tax on gasoline.” From this circumstance we conclude that the “excise, license or privilege tax upon gasoline” prohibited to local governments by the Constitutional enactment before us were intended to include taxes directly upon the sale or consumption of gasoline and were not intended to include non-discriminatory occupational license taxes measured by the sale of gasoline such as that levied by the present municipal ordinance.
Appellant retailers’ contention that the constitutional exemption of gasoline from excise, license or privilege taxes should be regarded as having the legislative *560 intent to exempt all activities relating to gasoline from any excise taxation whatsoever, fails to find support in the legislative history of the enactment and further overlooks the well recognized doctrine of statutory construction that an exemption from taxation is strictly construed and must be clearly and unequivocally and affirmatively established. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So. 2d 477; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; State v. Pittsburgh Testing Laboratory, 203 La. 147, 13 So.2d 710; Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634.
Further, where (and of course only where) the construction or application of a statute is doubtful, great weight in the judicial interpretation thereof should be given to the construction consistently given a statute by those charged with applying it administratively. Hester v. Louisiana Tax Commission, 227 La. 1022, 81 So.2d 381; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Jackson v. Coxe, 208 La. 715, 23 So.2d 312; State v. Standard Oil Co., 190 La. 338, 182 So. 531. And we are reinforced in our conclusion that the constitutional exemption of gasoline from local excise taxation was not intended to exempt gasoline retailers from a local occupational license tax by the contemporaneous and subsequent construction accorded by the executive departments of our State and local governments to such tax enactments and the exemption provision.
Occupational license taxes by the State and by local governments are authorized by Article X, Section 8, La.Constitution (which has remained unchanged since 1934), which also provides that “No political subdivision shall impose a greater license tax than is imposed for State purposes.” Pursuant thereto, the State’s occupational license tax upon retail dealers has consistently been measured by gross sales — in the case of gasoline retailers, including of gasoline. LSA-R.S. 47:353.
It is conceded that insofar as gasoline retailers were concerned, the municipal and parochial occupational license taxes authorized by LSA-R.S. 47:397 and its predcessors have, until the present, been similarly measured. Cf. also, Opinions of Attorney General 1956-1958, p. 865. For instance, an opinion of the Attorney General held that the gallonage taxes collected by the retailer must be included in the gross receipts from the sale of gasoline which measure the local occupational license tax of filling stations (Opinions of Attorney General 1944-1946, p. 995) ; whereas, had the construction contended for by appellants been in effect, not only the gallonage taxes upon gasoline sold, but the entire proceeds received by the retailer from the sale of gasoline should have been excluded *562 from the gross receipts used to measure the local occupational license tax.[10]
Finally, appellants urge that, under the rule of construction that all provisions of and terms used in a statute should if possible be given effect since all are presumed to have some legislative meaning and none to be inserted by inadvertence (State v. Texas Co., 205 La. 417, 17 So.2d 569), the constitutional prohibition against “license taxes” upon gasoline must include an intent to prohibit local license taxes because the principal if not only type of license tax per se relating to gasoline is an occupational license tax such as the presént municipal levy.
Conceding the forcefulness of this argument, we nevertheless conclude that in view of the legislative history of the enactment the inclusion of the term “license” in the descriptive phrase “excise, license or privilege tax upon gasoline” must be viewed as a usage of these sometimes synonymous terms simply to describe generically excise or indirect taxes[11] relating to the sale or use of gasoline, rather than an attempt to specify different types of taxes prohibited.
Having thus found that the “excise, license or privilege tax upon gasoline” prohibited to local governments by Article XIV, Section 24.1, La.Constitution, do not include non-discriminatory occupational license taxes measured by the sale of gasoline, our original decree herein is recalled and set aside; and the judgment of the District Court dismissing plaintiffs’ suit is affirmed.
Affirmed.
SIMON, J, dissents and adheres in the original opinion rendered May 26, 1958.

. This prohibition also applies to “kerosene or other combustibles used in the generation of motive power.” For simplicity in discussion in this opinion. wherever appropriate, reference to taxes on “gasoline” shall include also taxes upon the other motor fuels falling within the prohibition.

. Cf., 1 Cooley, Sec. 45 at pp. 129-130: “An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, or business taxes. There is no clear line of demarcation between so-called ‘license’, ’occupation’, and ‘privilege’ taxes.”

. The title of said Act 180 of 1924 is as follows: “Joint Resolution Proposing an amendment to the Constitution of the State of Louisiana providing for the creation of a Special Paving Fund for the City of New Orleans and dedicating said Fund to the payment of the City’s proportion of the cost of pavement of streets and roadways, including sub-surface drainage, as now or may hereafter be provided by law and for the maintenance and repair of streets, and providing the sources from which said Fund shall be derived.”

. The title of said Act No. 341 of 1936 is as follows: “A Joint Resolution Proposing an amendment to the Constitution of the State of Louisiana, by amending and re-enacting the provisions of Act No. 180 of 1924, adopted as an amendment to the Constitution of the State of Louisiana, (Dart’s Section 24.1 of Article XIV) providing for the creation of a Special Paving and Permanent Public Improvement Fund for the City of New Orleans and dedicating said Fund to the payment of the City’s proportion of the cost of paving, repaving, surfacing and resurfacing of streets, as such terms now are or may hereafter be defined in the Charter of the City of New Orleans, and for the maintenance and repair of streets and for permanent public improvements, providing the taxes from which said Fund shall be derived, and authorizing the City of New Orleans to fund said taxes into bonds, notes, certificates or' other evidences of debt, and providing for the' submission of said amendment to the electors of the State for their approval or rejection.”

. Act 15 of the Extra.Scssion of 1928 was amended by Acts 72 of 1934, Act 21 of the First Extra.Sess. of 1934 (which permitted the City of New Orleans also to levy such a tax), and Act 32 of the Second Extra.Sess. of 1934. Both this enactment as amended and Act 31 of the Second Extra.Sess. of 1934 (permitting the parishes and the City of New Orleans to levy an additional tax of one cent per gallon), were repealed by Act 87 of 1936, which provided that in lieu of the taxes heretofore levied by virtue of these enactments, there should be a tax collected by the State of two cents per gallon “on all gasoline or motor fuel, sold, used or consumed in the State of Louisiana.”

. City of New Orleans v. Paciera, 180 La. 869, 873, 158 So. 1, 2; Cf. Weixel & Janssen v. City of New Orleans, 184 La. 651, 167 So. 179, 180, wherein the similar imposition upon the sale or consumption of kerosene is spoken of several times as a “tax on kerosene” in the majority and dissenting opinions.

. Opinions of the Attorney General 1936-1938, p. 1040. Cf. Opinions of the Attorney General 1932-1934, p. 935, where said tax is referred to as a “gasoline tax.”

. The title of said Act No. 395 of 1940 is as follows: “A Joint Resolution Proposing an amendment to the Constitution of Louisiana by repealing and striking therefrom the Section added by the provisions of Act 180 of 1924, adopted as an amendment to the Constitution of Louisiana on November 4, 1924, as amended by the provisions of Act 341 of 1936, adopted as an amendment to the Constitution of Louisiana on November 3, 1936, providing for the creation of a Special Paving Fund for the City of New Orleans and dedicating said fund to the payment of the city’s proportion of the cost of paving streets and roadways including sub-surface drainage as now or may hereafter be provided by law, and for the maintenance and repair of streets and providing the sources from which said funds shall be derived and authorizing the City of New Orleans to fund said taxes into bonds, notes, certificates or other evidences of debt, by substituting therefor a new section to be designated as Article XIV, Section 24.1, providing that no parish, municipality or other political subdivision shall levy any tax upon gasoline, kerosene or other combustibles used in the generation of motive power and that nothing in this Constitution shall be construed to limit the right of the Legislature to levy state taxes on the same.”

. Constitutional provisions are construed and interpreted by the saíne rules as are other laws. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So. 2d 477.

. In response to this ruling by the Attorney General (apparently indicating concurrence to the extent that the sales price, less taxes, of gasoline should be included in the gross receipts for the purpose of measuring the State and local occupational license taxes), the next Legislature immediately enacted as the last paragraph to Act 18 of 1946 (now found as the last paragraph of LSA-R.S. 47:353) the proviso that gasoline retailers should exclude in calculating gross sales an amount equal to any State and Federal “license, privilege or excise tax.”

. See, e. g., City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6; Giamalva v. Cooper, 217 La. 979, 47 So.2d 790, and cases therein cited; State ex rel. Porterie v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9.