525 So.2d 521 (1988)
The STATE BOND COMMISSION OF the STATE OF LOUISIANA
v.
ALL TAXPAYERS, PROPERTY OWERS, AND CITIZENS OF the STATE OF LOUISIANA and Non-Residents Owning Property or Subject to Taxation Therein, and all Other Persons Interested in or Affected in Any Way by the Issuance of Revenue Anticipation Notes of the State of Louisiana.
No. 88-CD-0884.
Supreme Court of Louisiana.
April 27, 1988.
Rehearings Denied April 28, 1988.
*522 William J. Guste, Jr., Atty. Gen., Ellis C. Magee, Martha S. Hess, Jennifer Trosclair, Asst. Attys. Gen., Office of the Governor, Thomas A. Casey, Charles L. Patin, Jr., John N. Kennedy, New Orleans, Orrick, Herrington & Sutcliffe, Donald J. Robinson, John J. Keohane, New York City, for plaintiff-applicant.
Michael S. Baer, III, Alexandria, for defendant-reconvenor applicant.
A. Edward Hardin, Baton Rouge, for defendant-respondent.
LEMMON, Justice.
This validation action, filed pursuant to La.R.S. 13:5121-5130, involves the issuance of revenue anticipation notes authorized by La.R.S. 39:1410.41-1410.53, as amended by Act 61 of 1987 and by Act 14 of 1988 Extraordinary Session.[1] The principal issues are (1) whether the issuance of the notes violates La. Const., art. III, § 16's prohibitions against withdrawal of money from the state treasury without a specific appropriation and against making an appropriation for more than one year; and (2) whether La.R.S. 13:5129's provision that a definitive judgment in a validation action constitutes a permanent injunction against the institution of another action to contest the validity of the notes violates the open courts guarantee of La. Const., art. I, § 22 or the right granted to all persons by La. Const., art. VII, § 8(C) to contest the validity of the issuance of bonds within thirty days of the publication of the resolution authorizing the issuance.

I
On April 12,1988, a motion for judgment was filed in the 19th Judicial District Court by the State Bond Commission pursuant to Louisiana's validation statute, La.R.S. 13:5121-5130.[2] The Commission sought an order directing publication of the motion in the official state journal, as required by La.R.S. 13:5124, and prayed for judgment declaring the validity: (1) of Act 14 of 1988 Extraordinary Session, which amended La. R.S. 39:1410.45; (2) of the revenue anticipation notes and the security therefor, the notes being designated State of Louisiana Revenue Anticipation Notes, Series 1988-A, to be issued in one or more series, not to exceed $250,000,000.00 aggregate principal amount; (3) of the related proceedings and convenants set forth in a resolution of the Commission adopted on April 12, 1988, authorizing the issuance of the notes; and (4) of Act 6 of 1988 Extraordinary Session, which amended the 1987 General Appropriations Act (Act 18 of 1987) relative to the pledge of funds for repayment of the Series 1988-A notes. The Commission also requested issuance of a permanent injunction against the institution by any person of any action contesting the validity of the notes.
The district judge ordered publication of the motion on April 14 and 15 and further ordered all taxpayers, property owners and citizens to show cause on April 26, 1988 why the relief should not be granted.[3]
Camille F. Gravel, Jr., in his capacity as a taxpayer and citizen of the state, filed an *523 answer and reconventional demand.[4] He alleged that La.R.S. 39:1410.41-1410.53, as amended by Act 14 of 1988 Extraordinary Session, as well as certain provisions of Act 18 of 1987 and Act 6 of 1988 Extraordinary Session, were unconstitutional.
The parties filed a joint stipulation of facts, which included the following:
1. The resolution authorizing the issuance of the notes was properly published in the state's official journal.
2. The notes will be repaid solely from revenues anticipated during the current fiscal year, but not yet credited to the state general fund, and from revenues accruing in the current fiscal year and collected during the first forty-five days of the following fiscal year.
3. It is a normal practice for revenues to accrue to the State in a current fiscal year and for those revenues to be collected in the following fiscal year, with such accrued revenues received in the following fiscal year being credited to the current fiscal year if they are received within the first forty-five days of the following fiscal year.
4. The state treasury is currently faced with cash flow shortfalls which will prevent the timely honoring of warrants upon the treasury in the current fiscal year, and funds within the state general fund are not anticipated to be sufficient for timely honoring of warrants payable in the months of May and June, 1988.
Pursuant to a joint application for supervisory writs, this court decided to bypass the normal trial and appellate procedures and ordered the filing of the record here and an expedited briefing and argument schedule. See State Bond Commission v. All Taxpayers, Property Owners and Citizens of the State, 510 So.2d 662 (La.1987).

II
Revenue anticipation notes were first authorized by Act 28 of 1986, which enacted La.R.S. 39:1410.41-1410.53. The purpose of Act 28 (amended by Act 61 of 1987 to extend its expiration date from June 30, 1987 to June 30, 1988), as stated in La.R.S. 39:1410.41, was:
"This legislature hereby finds that the state currently experiences and may hereafter experience fluctuations in revenues and expenditures and that as a consequence thereof, temporary cash flow deficits could occur resulting in the temporary inability of the state to pay expenses from currently budgeted and appropriated revenues of its various funds. The purpose of this Part is to authorize the State Bond Commission to issue and sell revenue anticipation notes to avoid temporary cash flow deficits and to provide a working balance in the state general fund to enable the state to pay expenses in a timely manner from currently budgeted and appropriated revenues of the state general fund."
Act 28 authorized the Commission to issue revenue anticipation notes in an amount not exceeding twenty per cent of the revenues anticipated, but not yet credited to the general fund for the fiscal year in which the notes are issued. Under that authority the Commission on July 9, 1987 adopted a resolution to issue revenue anticipation notes in the amount of $280,000,000.
The constitutionality of Act 28 and of the Commission's resolution was challenged in State Bond Commission v. All Taxpayers, Property Owners and Citizens of the *524 State, 510 So.2d 662 (La.1987). The defendants asserted that the Act and the revenue anticipation notes, authorized for issuance by the Bond Commission, violated La. Const., art. VII, § 6(A), which provides in pertinent part:
"Unless otherwise authorized by this constitution, the state shall have no power, directly or indirectly, or through any state board, agency, commission, or otherwise, to incur debt or issue bonds except by law enacted by two-thirds of the elected members of each house of the Legislature."
Since Act 28 had been enacted by only a majority of the Legislature and not by the two-thirds required by the constitution, the critical issue in that litigation was whether the revenue anticipation notes constituted the incurring of debt within the meaning and context of Article VII, § 6(A). In holding Act 28 to be valid and constitutional, this court stated:
"It is clear the device utilized by the bond commission to enhance the cash flow of the state fisc is one which does not provide any additional money for state purposes. An `indebtedness' may be created in one sense but not a `debt' historically understood to burden future legislatures and taxpayers and one which is secured by the full faith and credit of the state." (emphasis in original)
Id. at 666.
During the 1988 Extraordinary Session, the Legislature enacted Act 14, which amended La.R.S. 39:1410.41-1410.53 as follows:
(1) La.R.S. 39:1410.44 was repealed, thus eliminating the twenty per cent limit on the amount of the notes which may be issued in relation to the anticipated revenues for the remainder of the fiscal year,
(2) The expiration date was extended to June 30, 1989; and
(3) Revenue anticipation notes were allowed to be secured not only by revenues as previously provided in Act 28 of 1986, but also by revenues which will accrue and be credited to the state general fund for the fiscal year in which the notes are issued, although the revenues will not actually be received until the succeeding fiscal year.[5]
Thus, the only material change, pertinent to the present litigation, effected by the 1988 legislation was that which permitted revenues which accrue during the current fiscal year and are to be received in the first forty-five days of the following fiscal year to serve as a source of repayment for revenue anticipation notes, which are now allowed to mature within that forty-five-day period.

III
Gravel contends that the revenue anticipation notes, to be issued on May 2 during the current fiscal year and to be repaid with funds received after June 30, 1988, the last day of the current fiscal year, violate La. Const., art. III, § 16's prohibition against an appropriation for longer than one year.[6] He argues that this *525 court's 1987 decision that revenue anticipation notes do not constitute the incurring of debt turned on the fact that the notes would be repaid from revenues from currently budgeted funds and would not burden future Legislatures. He further argues that repayment of the notes by money from the general fund violates La. Const., art. Ill, § 16's requirement that no money be withdrawn from the general fund without a specific appropriation.
The provisions of the Louisiana Constitution are limitations on the otherwise plenary power exercised by the Legislature, which may enact any legislation not prohibited by the Constitution. A party attacking legislation as invalid must rely upon some constitutional provision which limits the power of the Legislature to enact the particular statute. Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977).
Repayment of revenue anticipation notes issued in the current fiscal year with funds which are not received until the following fiscal year is an issue of first impression. In effect, statutory authorization of repayment from this source is a legislative recognition that funds constructively in the general fund during the current fiscal year may be treated as though actually in the fund.[7] This provision is based on generally accepted accounting principles by which state and local governments may abandon cash accounting procedures in favor of accrual accounting procedures. See La.R.S. 39:136.1(A), enacted in 1976, which authorized use of accrual accounting procedures as follows:
"All cash balances occurring from appropriations made by legislative act ... to any state agency for which no bona fide liability exists on the last day of each fiscal year shall be remitted to the state treasurer by the fifteenth day following the last day of the fiscal year. Any appropriations ... remaining at the end of the fiscal year against which bona fide liabilities existed as of the last day of the fiscal year may be withdrawn from the state treasury during the forty-five day period after the last day of the fiscal year only as such liabilities come due for payment." (emphasis added)
Section 11 of Act 18 of 1987, the General Appropriations Act, also recognized the accrual method of accounting:
"For the purpose of paying appropriations made herein, all revenues due the state in Fiscal Year 1987-88 shall be credited by the collecting agency to Fiscal Year 1987-88 provided such revenues are received in time to liquidate obligations incurred during Fiscal year 1987-88." (emphasis added)
There is no constitutional prohibition against use of recognized accounting procedures which reasonably attribute revenues to the appropriate fiscal year in which the revenues either accrue or are actually received. Nor does the statutory establishment of a fiscal year preclude the use of such reasonable procedures.
As to the one-year limitation on appropriations, La.R.S. 39:136.1(A) provides a pertinent analogy. That statute allows appropriated funds remaining at the end of the fiscal year, which otherwise must be returned to the state treasurer, to be utilized for a limited period of time to pay bona fide liabilities which existed at the end of the fiscal year. Conversely, Act 14 permits bona fide liabilities which existed at the end of the fiscal year to be paid with revenues that accrued (but were not received) during the fiscal year. Such a procedure does not violate La. Const., art. Ill, § 16.
As to the withdrawal of money from the treasury without a specific appropriation, Gravel argues that La. Const., art. VII, § 9 requires that all money received by the state or a commission be deposited into the treasury and that withdrawal of *526 the money to repay the notes without a specific appropriation is constitutionally impermissible.
An additional appropriation to pay the notes when they become due is not constitutionally required.[8] The notes will be issued to fund the present payment of expenses for which appropriations were previously made by the Legislature, but for which funds are not yet available. La.R.S. 39:1410.43, which authorizes the issuance of the notes, also requires repayment of the notes from revenues anticipated in the general fund. The proceeds of the notes provided money to pay expenses in advance of the receipt of appropriated money which will in turn be used to repay the notes. Since no new expenses will be incurred and no new revenues will be generated, no additional appropriation is necessary to repay the notes which are simply used to pay currently budgeted expenses for which funds had been appropriated.

IV
Gravel finally contends that La.R.S. 13:5129 violates the open courts guarantee of La. Const., art. I, § 22 in providing that a definitive judgment validating the notes "shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings". Additionally, Madden contends that the injunction imposed by La. R.S. 13:5129, if the judgment is rendered less than thirty days after publication of the notice of intention to issue the notes, violates the right of "any person" under La. Const., art. VII, § 8(C) to contest the validity of the proceedings within thirty days of the publication.
As to the latter contention, Section 8(C), which applies to "[b]onds, notes, certificates, or other evidences of indebtedness of the state", must be read in conjunction with Section 6(A) of Article VII, which this court in the litigation over the 1987 notes held was not applicable to revenue anticipation notes. Just as the issuance of revenue anticipation notes does not constitute the incurring of debt in the constitutional context of Section 6(A) and is not subject to Section 6(A)'s two-thirds vote requirement, the issuance of such notes is not subject to the procedures required by Section 8(C), since that section also applies only in the constitutional context to the incurring of debt or the issuance of bonds.
As to the injunction that La.R.S. 13:5129 imposes when a judgment is rendered in this matter, the constitutional guarantee of open courts is adequately protected by other safeguards in the procedure. Section 5124 provides for service on all taxpayers, property owners and citizens by two publications of the motion for judgment. Section 5125 provides a reasonable period after service by publication for any person in interest to enter the action and contest the issuance of the notes, and Section 5126 further authorizes intervention with leave of court after the expiration of the period for answering. Section 5126 also provides the opportunity for a hearing.
The Legislature, in enacting the validation procedure, stated its intention "to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels". While the nature of the procedure requires summary action, the ample opportunity provided to persons in interest to assert their rights fulfills the requirements of the constitutional provision mandating open courts.

DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that Act 14 of 1988 Extraordinary Session and Section 12 of *527 Act 18 of 1987, as amended by Act 6 of 1988 Extraordinary Session, are constitutional and valid.
It is further ordered, adjudged and decreed that revenue anticipation notes of the State of Louisiana in aggregate principal amount not exceeding Two Hundred Fifty Million ($250,000,000) Dollars, to be designated State of Louisiana, Revenue Anticipation Notes, Series 1988-A, to be issued in one or more series, are hereby validated and declared to be legal and valid obligations of the issuer, State Bond Commission of the State of Louisiana.
It is further ordered, adjudged and decreed that all pledges of revenue and all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of the notes more particularly described above are hereby validated and declared to be legal and valid; and,
It is further ordered, adjudged and decreed that any application for rehearing in this case be filed in this court not later than 1:00 p.m. on Thursday, April 28, 1988.
WATSON, J., concurs in part and dissents in part, assigns reasons.
WATSON, Justice, concurring in part and dissenting in part.
The majority opinion is correct in all particulars except the pronouncement that Article VII, Sect. 8(C) does not apply. The constitutional provision provides that all persons have a 30 day period within which to contest bonds, notes, certificates, or other evidences of indebtedness of the State.
While there is no question about fiscal urgency, in my opinion the State errs in advancing the argument and this court errs in accepting the proposition that the clear words of the Constitution are not applicable. It is noteworthy that in the prior suit concerning RANS, the judgment of this court was not released until after the constitutional period had expired.
Therefore, I respectfully dissent in part.
NOTES
[1] Act 61 of 1987 was also amended by Act 6 of 1988 Extraordinary Session.
[2] On the same day the Commission authorized by resolution the issuance of the revenue anticipation notes at issue in this litigation.
[3] La.R.S. 13:5125 requires publication of the time and place of the hearing, which must be set between ten and thirteen days after the second publication. La.R.S. 13:5126 requires a defendant to answer within seven days of the second publication. A person may become a party either by pleading within seven days of the second publication or by intervention thereafter with leave of court.
[4] Roberta Madden filed an answer in the district court on April 21, 1988, seeking to declare the issuance of the notes to be invalid, and a motion for leave to conduct discovery. The trial judge granted the motion and set April 25 as the date for return of discovery information. (At that time this court had already assumed jurisdiction over the matter, ordered the record to be filed here, and set a hearing for April 26.)

On April 25 Madden filed in the district court a request for documents. On the same day she filed a motion in this court to remand or to continue the case.
This court denied the motion on April 26. However, because she arguably had properly joined in the suit, she was allowed to participate fully in the oral arguments.
[5] La.R.S. 39:1410.45, as amended by Act 14, now provides in pertinent part:

"Notes shall be issued in a form consistent with the provisions of this Part describing the fund and the revenue from which such notes are payable; however, in no event shall the notes be payable from any revenues other than those credited to the state general fund for the fiscal year in which the notes are issued. The notes shall mature not later than the last day of the fiscal year in which the same were issued; however in the event that the notes are payable from revenues which will accrue and be credited to the state general fund for the fiscal year in which the notes are issued but which will actually be received in the next succeeding fiscal year, the notes shall mature not later than August 14 of said next succeeding fiscal year, and in suck event the debt service on said notes shall be deemed a bona fide liability of the state general fund existing as of the last day of the fiscal year in which the notes were issued within the meaning of R.S. 39:136.1. The treasure shall warrant the state general fund for the repayment of the notes when due but only from revenues accrued to the state general fund for the fiscal year in which the notes were issued." (emphasis added)
[6] La. Const., art. Ill, § 16(A) provides:

"Except as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year."
[7] Thus, sales tax revenues which are collected by vendors and accrue to the state during the last part of the current fiscal year, but are not received by the state during the fiscal year because of the lag time in the remitting of the collected taxes, are properly allocated to the current fiscal year.
[8] In Section 12 of Act 14 of 1988 Extraordinary Session the Legislature amended the 1987 General Appropriation Act and authorized the Treasurer at the appropriate time to warrant the general fund for the purposes of repaying these particular notes.