| iFOGG, Judge,
dissenting.
For the following reasons, I respectfully dissent.
‘ During the First Extraordinary Session of the Louisiana Legislature in 1996, which convened March 24, 1996, the Legislature enacted Act 7 which created the Louisiana Gaming Control Board (“LGCB”), and transferred to that entity certain powers and authority previously held by the Louisiana Economic Development and Gaming Corporation (“LEDGC”). LSA-R.S. 27:31 and 32.
The LEDGC was a corporation, not a state agency. LSA-R.S. 27:204. While LEDGC existed, LSA-R.S. 27:245(A)[1] gave it the power to set aside or renegotiate the provisions of a casino operating contract of a casino operator who was placed in bankruptcy as follows:
A. The board shall have the right to set aside or renegotiate the provisions of any casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conser-vatorship, or similar status. The corporation may agree in writing to allow the casino operator to be placed in bankruptcy, receivership, conservatorship, or other similar status without setting aside, revoking, or renegotiating the casino operating contract.
|2In 1996, the legislature created the LGCB, which unlike its predecessor is a state agency and a part of the executive branch. LSA-R.S. 27:32. In 1996, it also promulgated LSA-R.S. 27:224(D) and (E) which clearly apply to the LGCB. Those provisions read as follows:
D. The governor by executive order, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may set aside or order that the corporation renegotiate the provisions of the casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, or similar status. Any action so taken shall constitute the revocation or modification of a pure and absolute revocable privilege as provided in R.S. 27:202(C). Neither the state of Louisiana nor any political subdivision thereof shall be liable in damages for such revocation, modification, or order for renegotiation.
E. The governor by executive order or the board overseeing the operation of the casino, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may negotiate a new casino operating contract.
The conflict between these two provisions is apparent. The 1992 legislation gives the LEDGC, the predecessor of the LGCB, the power to renegotiate the operating contract of an owner placed in bankruptcy without legislative approval. LSA-R.S. 27:245(A). Under the law passed in 1996, three scenarios by which negotiation or renegotiation of a contract can occur are set forth: 1) with legislative approval, the executive branch, through the governor, can renegotiate an operating contract of an owner in bankrupt *967 cy; 2) with legislative approval, the executive branch, through either the governor or the LGCB, can negotiate a new casino operating contract; and 3) by Act or Resolution of the legislature, the legislative branch may renegotiate the provisions of a contract whose owner is in bankruptcy or negotiate a new casino operating contract. LSA-R.S. 27:224(D) and (E).
|3In summary, the provisions of the. 1992 law initially applied to the LEDGC, an entity that was hot á government agency and its actions under the statute did not require legislative approval. The provisions of the 1996 law apply to both the executive and the legislative branches and require that any future casino contract entered into by the state of Louisiana, regardless of which agency negotiates the contract, must be approved by the legislature. It is implausible to conclude that the language of these two statutes is not in conflict. Clearly, the powers granted'to the executive branch of government under the two laws differ. This conflict is impossible to harmonize and reconcile.
If there is an irreconcilable conflict between two statutes, only one can prevail. LSA-C.C. art. 10; Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1 Cir. 1984). When an irreconcilable conflict exists between two statutes, the later one prevails, as there is repeal by implication of the earlier one. Department of State Civil Service v. Housing Authority of East Baton Rouge, 95-1959 (La.App. 1 Cir. 5/10/96); 673 So.2d 726, writ denied, 96-1452 (La. 9/29/96); 679 So.2d 434. Considering the irreconcilable conflict between the above two statutes, the later must prevail. Under the prevailing statute, the legislature is required to approve any casino contract prior to its execution.
This determination raises the issue of the constitutionality of the statutes in light of La. Const, art. 2, § 2, which provides as follows: “Except as otherwise provided by this constitution, no one of these branches [legislative, executive, or judicial], nor any person holding office'in one of them, shall exercise power belonging to either of the others.” |4This issue was discussed in the trial court, but not addressed in the trial court’s judgment.[2]
An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950); State on behalf of J.A.V., 558 So.2d 214 (La: 1990). Unless the fundamental rights or privileges and immunities of ’a person are involved, a strong presumption exists that the legislature, in adopting legislation has acted within its constitutional authority. This presumption is especially forceful in the case of statutes enacted to promote a public purpose. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, etc., 529 So.2d -384 (La.1988). In order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. In re American Waste & Pollution Control Co., 588 So.2d 367 .(La.1991).
Conversely, the Louisiana Legislature has all powers which have not been denied it by the state constitution. In re American Waste & Pollution Control Co., 588 So.2d 367 (La.1991); Swift v. State, 342 So.2d 191 (La. 1977). The provisions of the Louisiana Con-' stitution serve as limitations on the otherwise plenary power exercised by the legislature, which may enact any legislation not prohibited by the Constitution. State Bond Com’n of the State of Louisiana v. All Taxpayers, Property Owners & Citizens, 525 So.2d 521 (La.1988).
The constitution contains no limitations on the legislature with respect to the enactment of gambling legislation other than that contained in La. Const, art. 12, § 6(B), which provides that “[gambling shall be defined by and suppressed by the legislature.” That provision was explored in the ease of Polk v. Edwards, 626 So.2d 1128 (La.1993) and is not concerned with the issues raised herein. *968 Furthermore, there is no constitutional provision giving the governor exclusive power over this area. Therefore, the legislation is not in violation of Article 2, § 2 of the Louisiana Constitution.
Perhaps review of the issues raised in this ease will afford our supreme court an opportunity to revisit its opinion in Polk v. Edwards, wherein it validated the Louisiana Legislature’s exercise of its authority to “define” gambling under La. Const, art. 12, § 6 by exempting from that definition certain forms of “gaming.” Rather than enacting a constitutional amendment which permitted gambling activity in Louisiana, the legislature chose to define gambling as “the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.” LSA-R.S. 14:90 A(l)(a). This definition specifically excluded gaming activities or operations on board a commercial cruiseship, upon a riverboat, and at the official gaming establishment and enabled the legislature to enact the Casino, Cruise-ship Gaming, Riverboat Gaming, and Video Poker Acts.

. LSA-R.S. 4:246 was redesignated as LSA-R.S. 27:245 in 1996, pursuant to § 3 of Acts 1996, 1st Ex.Sess., No. 7.

. When the oral reasons or minute entry conflicts with the written judgment, the latter governs. The trial judge may, within his authority, render judgment which differs substantially from his oral statements. Such oral reasoning forms no part of the judgment. It is the formal, signed judgment which governs the controversy. Sanders v. Pilley, 96-0196 (La.App. 1 Cir. 11/8/96); 684 So.2d 460, writ denied, 97-0352 (La. 3/21/97); 691 So.2d 90.