Dear Treasurer Kennedy:
Reference is made to your request for an Attorney General's opinion regarding the provision of seeds or cash advances to state agencies under the provisions of LSA-R.S. 39:71(D), which was enacted last year pursuant to Act 105 of the 2004 Regular Session.
By way of background, we note that the state and its agencies often experience temporary fluctuations in revenues to various special funds within the Treasury, which fluctuations can result in the temporary inability of an agency to pay expenses from currently unrealized revenues appropriated out of such special funds. "Seeds", or cash advances on appropriations, provide a way for the state to deal with temporary cash flow deficits within such special funds, and enable the state and its agencies to pay expenses in a timely manner from anticipated, but as yet unrealized, appropriated revenues. By virtue of a seed (i.e. a cash advance from the state's General Fund), the Treasury can provide a state agency with an advance on anticipated revenues that have been appropriated to the agency out of a special fund.
Apparently, in past years, prior to the enactment of LSA-R.S.39:71(D), the annual Ancillary Appropriations Acts contained an appropriation to the Department of the Treasury for the seeding of appropriations authorized and approved by the Commissioner of Administration. See, for example, Section 8 of Act 4 of the 2004 Regular Legislative Session.[1]
LSA-R.S. 39:71(D) purports to substantively authorize the practice of providing seeds or cash advances, and pertinently provides:
 "Upon approval of the commissioner of administration, and concurrence of the treasurer of the state of Louisiana, a cash advance or seed may be granted to a requesting state agency for the efficient operation of the state agency. The requesting agency shall provide satisfactory written justification to the commissioner of administration as the need and benefit to the state agency. Any cash advance or seed shall be repaid by the receiving agency to the state treasury in the same fiscal year for which it was approved. Approval of such cash advance or seed is strictly contingent upon the availability of cash to be determined by the treasurer of the state of Louisiana. No legislation or other appropriation is necessary for an agency to request and receive a cash advance or seed." (Emphasis supplied).
As we understand your letter, as illuminated by conversations with your Fiscal Officer, Mr. Gary Hall, questions have arisen as to whether or not the Treasurer must have authorization, in the form of an appropriation, to transfer the funds required for a requested seed or cash advance from the General Fund to a special fund, in order to accomplish the advance. Your request arises in light of the provisions of La. Const. Art. III, Sec. 16(A) and Art. VII, Sec. 10(D)(1), which prohibit the withdrawal of funds "from the state treasury" other than pursuant to an appropriation. Although LSA-R.S. 39:71(D) states that "no legislation or other appropriation is necessary", you would like this office to address whether an appropriation is required to be made (in addition to the appropriation made to the state agency to be seeded) in order for you to transfer money from the State's General Fund to a particular special fund for the benefit of the requesting state agency.
In the opinion of this office, the Treasury does not need authorization beyond that set forth in LSA-R.S. 39:71(D), nor an additional appropriation, to provide a state agency with a seed or cash advance on an appropriation made to that agency. In our opinion, as long as a seed is only issued to provide a cash advance on a legislatively authorized appropriation and will be repaid within the fiscal year, all in accordance with the procedures more fully set forth below, the constitutional requirements regarding appropriations prior to the withdrawal of money from the treasury will be satisfied.
In our opinion, seeds or cash advances, in accordance with the Constitution and LSA-R.S. 39:71(D), should only be issued to fund the present payment of expenses for which appropriations were previously made by the Legislature, but for which funds are not yet available. We further note that LSA-R.S. 39:71(D), in accordance with the constitution[2], requires repayment of a seed or cash advance by the requesting agency within the same fiscal year for which it is approved. Most importantly, in order to maintain compliance with the constitutional prohibition against withdrawals from the treasury in the absence of an appropriation[3], seeds or cash advances should only be made from the general fund to other funds within the state treasury. It is our advice that as long as these required procedures are followed, seeds, or cash advances, can be provided to state agencies to pay expenses in advance of receipt of appropriated money which will in turn be used to repay the seed. In such instances, no new expenses are incurred and no new revenues are generated; thus, no additional appropriation is necessary to fund the seed, which is simply used to pay currently budgeted expenses for which funds have been appropriated.
In reaching our determination herein, we were guided by the reasoning and analysis of the Louisiana Supreme Court as set forth in State Bond Commission of the State of Louisiana v. AllTaxpayers, Property Owners Citizens, 525 So.2d 521 (La. 1988), which determined that revenue anticipation notes do not violate the constitutional prohibitions against withdrawal of money form the state treasury without specific appropriation and against making appropriations for more than one year.
We were also guided by the principles of statutory construction and the presumptions afforded legislation, as recognized by the Supreme Court in Polk v. Edwards, 626 So.2d 1128 (La. 1993). Pertinently, the Polk decision provides:
 "An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950); State on behalf of J.A.V., 558 So.2d 214 (La. 1990). Unless the fundamental rights or privileges and immunities of a person are involved, a strong presumption exists that the legislature in adopting legislation has acted within its constitutional authority. Board of Directors of Louisiana Recovery Dist. V. All Taxpayers, Property Owners, etc., 529 So.2d 384 (La. 1988). This presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to public finance. Id. At 387; See United States v. Jacobs, 306 U.S. 363, 369-70, 59 S.Ct. 551, 555, 83 L.Ed. 763, 768, mot. den., 306 U.S. 620, 59 S.Ct. 640, 83 L.Ed. 1026 (1939). . .
 The Louisiana Legislature, elected by the state's citizenry, may enact any legislation that the state constitution does not explicitly prohibit. Thus, in order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. In re American Waste Pollution Control Co., 588 So.2d 367 (La. 1991); Louisiana Recovery District, 529 So.2d 384.
* * *
 The legislature's powers are derived from the citizens of the state who freely elect their legislative representatives. Alternatively stated, the provisions of the Louisiana Constitution serve as limitations on the otherwise plenary power exercised by the legislature, which may enact any legislation not prohibited by the Constitution. State Bond Comm'n of the State of Louisiana v. All Taxpayers, Property Owners Citizens, 525 So.2d 521 (La. 1988) Any doubt as to the legislation's constitutionality must be resolved in favor of constitutionality. Louisiana Recovery District, 529 So.2d 384. Accordingly, in an attack upon a legislative act as falling within an exception to the legislature's otherwise plenary power, an opponent must establish more than that the constitutionality of the legislation is fairly debatable. The opponent must establish clearly and convincingly that the constitutional aim was to deny to the legislature the power to enact the legislation. Id. at 388."
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam
Xc: Ron J. Henson, First Asst. Treasurer James H. Napper, II, Executive Counsel Gary Hall, Fiscal Officer
[1] Section 8 of Act 4 of the 2004 Regular Legislative Session pertinently provides: "DEPARTMENT OF THE TREASURY For providing monies to establish petty cash, travel imprest funds, and "seeding" of appropriations for cash flow which requires repayment within the same fiscal year, including reimbursement fro federally funded projects, as authorized and approved by the commissioner of administration. PAYABLE FROM: State General Fund, be it more or less estimated at $1,000,000."
[2] In accordance with La. Const. Art. III, Sec. 16(D), no appropriation can be made for longer than one year.
[3] La. Const. Arts III, Sec. 16(A); Art. VII, Sec. 10(D)(1).