STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-506 consolidated with 07-684

FRANCES CARRON

VERSUS

CITY OF OPELOUSAS

**********
APPEAL FROM THE
STATE CIVIL SERVICE COMMISSION
PARISH OF ST. LANDRY
DOCKET NO. 15418
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.

REVERSED.

Daniel M. Landry, III
P. O. Box 3784
Lafayette, LA 70502
(337) 237-7135
Counsel for Plaintiff/Appellee:
    Frances Carron

G. Douglas Dean
Dean Law Offices
P.O. Drawer 280
Opelousas, LA 70570
(337) 942-5111
Counsel for Defendant/Appellee:
    Opelousas Municipal Civil Service Commission

Frank P. Trosclair, Jr.
Taylor and Trosclair
P. O. Drawer 1149
Opelousas, LA 70571-1149
(337) 948-3007
Counsel for Defendant/Appellant:
    City of Opelousas, LA

Pride Justin Doran
Williams & Doran, PLLC
P. O. Box 2119
Opelousas, LA 70571
(337) 235-3989
Counsel for Defendant/Appellant:
    City of Opelousas, LA

GREMILLION, Judge.

In this case, the defendant, the City of Opelousas (City), appeals from the finding of the Opelousas Municipal Civil Service Board (Board) in favor of the plaintiff, Frances Carron.[1]  For the following reasons, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Carron was appointed as the City Clerk and Tax Collector for the City of Opelousas in 1988.  On January 9, 2007, after being advised that she would not be re-appointed to her position, Carron announced that she would be retiring at the end of the month.  However, on January 11, 2007, Carron sent a letter to the Mayor advising him that she had changed her mind about retiring and that she would not voluntarily terminate her position with the City.  Carron, thereafter, received a letter on January 25, 2007, which was dated January 24, 2007, from the Mayor reconfirming the fact that a new person had been appointed as City Clerk and Tax Collector, and that effective February 1, 2007, she would no longer be on the City's payroll.

Carron appealed the action of the City to the Board via a letter dated February 1, 2007.  The City filed an exception to jurisdiction and a motion to dismiss her appeal.  Following a March 12, 2007 hearing, the Board rendered a decision denying the exception to jurisdiction and motion to dismiss.  The Board declared that Carron's resignation was not made in accordance with civil service rules, thereby giving her standing to bring an appeal.  The Board further found that Carron was a

---

[1]This case is consolidated with *City of Opelousas v. Opelousas Municipal Civil Service Commission*, Docket No. 07-684.  Both cases center around the same issue of whether certain city employees, i.e., "executive department heads," are classified employees under the Opelousas municipal civil service system.  In this case, the trial court denied the defendant Commission's exception of res judicata, granted various parties' exceptions of lack of subject matter jurisdiction and no cause of action, and dismissed the City's petition for issuance of a temporary restraining order, preliminary and permanent inunction, and for declaratory judgment.  The trial court did not address the underlying issue, but found that the Commission had exclusive jurisdiction to decide the issue.  The City's appeal followed.

civil service employee based on Opelousas Ordinance 11 of 1962. It further ordered the reinstatement of Carron to the office of City Clerk and Tax Collector and removed from that position, the new appointee, Karen Frank. The City now appeals.

The City assigns as error, the Board's decisions that:

1. Carron held a classified position under the municipal civil service and was, therefore, entitled to the protections afforded by municipal civil service law.

2. Carron had standing to appeal to the Board and that the Board had jurisdiction to decide the validity of the appointment of Frank and the removal of Carron.

3. The Mayor, with the confirmation of the Board of Aldermen, does not have the authority to appoint, nominate, and select Frank as City Clerk and Tax Collector for the City in the absence of cause or misconduct of Carron, under municipal service laws and regulations.

4. The appointment and term of office of Carron did not expire and terminate at the time of the first regular meeting of the Board of Aldermen succeeding each regular municipal election.

5. The Mayor, subject to confirmation by the Board of Aldermen, is not required by law to appoint a Clerk and Tax Collector at the first regular meeting of the Board of Aldermen succeeding each regular municipal election.

6. The appointment of Frank did not constitute and have the effect of removing and terminating Carron from that office.

7. Alternatively, that Carron did not quit or resign the office of City Clerk and Tax Collector.

8. Alternatively, that any appeal of Carron to the Board was not barred by or prescribed by the lapse of more than fifteen days.

9. Carron be reinstated to the office of City Clerk and Tax Collector with back pay.

10. The City rescind and void its appointment of Frank to the office of City Clerk and Tax Collector.

### LAWRASON ACT

The City of Opelousas is a Lawrason Act municipality governed by the provisions of La.R.S. 33:321 et seq. The mayor is the chief executive officer of the

2

municipality. La.R.S. 33:362(B). Louisiana Revised Statute 33:381, titled "Municipal Officers," states that "[t]he officers of every municipality shall be a mayor, aldermen, a chief of police, a tax collector, and a clerk." La.R.S. 33:381(A). Louisiana Revised Statute 33:383 addresses municipal elections and terms of office. In accordance with that article, the City of Opelousas adopted, by ordinance, a plan that had municipal elections follow the time schedule of congressional elections such that elected officers take office on the first day of January following the election, with a term of office lasting four years. Louisiana Revised Statute 33:386 addresses the appointment of "municipal officials," and states that:

> A. At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, except as provided for in R.S. 33:381(D), and all other necessary officers whose election is not provided for in R.S. 33:381.
>
> . . . .
>
> D. The term of the clerk, tax collector . . . shall end at the time of the first regular meeting of the board of aldermen succeeding each regular municipal election.

The duties of the clerk and tax collector are, thereafter, described by statute. *See* La.R.S. 33:421, 424.

## CIVIL SERVICE EMPLOYEE

Following a special election held on August 12, 1961, Opelousas Ordinance Nos. 10 and 11 declared that the civil service system would be effective in the City of Opelousas on May 1, 1962. The specific polling language asked:

> Shall the employees and officers of the City of Opelousas, Louisiana, with the exception of those coming under the provisions of Article 14, Section 15.1 of the Louisiana Constitution of 1921, as amended, who have acquired civil service status by legislative act, city charter or otherwise, be subject to and governed by a civil service system based on merit, as provided for in Article 14, Section 15 of the Louisiana Constitution of 1921 as amended?

Ordinance 11 of 1962, Section 9, states (emphasis added):

3

That Municipal Civil Service for the municipal employees included thereunder shall become effective as of May 1, 1962, *including the heads of the various departments,* inspectors, curators, or custodians of parks or museums, whose salaries or wages are paid solely by the City of Opelousas on a regular wage or salary basis, or out of funds collected or derived from inspections and permits by the various city inspectors. The classified service shall not include the position of City Attorney, City Engineer, City Auditor, the members of any municipal boards or commissions, any elected officials, or any other positions excluded from the classified service by Article 14, Section 15 (G) - (a) of the Louisiana Constitution of 1921, which are not specifically included in the classified service by the provisions of this section.

Both the 1921 and 1974 Louisiana Constitutions addressed those employees who are considered classified.[2] Article 10 of the 1974 Louisiana Constitution governs public employees and officials. Article 10, § 1, addresses state and city civil service, and states (emphasis added):[3]

---

[2]It is clear that under the 1921 Constitution, Carron would not have been a classified employee, but for the City enacting a provision specifically including all regular employees and "the heads of various departments." Article XIV, § 15(G)(a)(2) of the 1921 Constitution stated that the unclassified city service shall include the "heads of principal departments appointed by the . . . Mayor or other governing body of any city."

[3]We note that the record does not reflect whether the civil service commission was validly created following the adoption of the 1974 constitution, which requires that a majority of electors adopt the civil service provisions found in Louisiana Constitution Article 10, § 14, which apply to those cities having fewer than 400,000 in population. However, this issue was not raised on appeal and we will not address it.

Louisiana Constitution Article 10, § 14 addresses those cities having fewer than 400,000 in population, and states (emphasis added):

> Section 2. (A) **Local Option**. Each city having a population exceeding ten thousand but not exceeding four hundred thousand, each parish, and each parish governed jointly with one or more cities under a plan of government, having a population exceeding ten thousand, according to the latest official decennial federal census, *may elect to be governed by this Part by a majority vote of its electors voting at an election held for that purpose. The election shall be ordered and held by the city, the parish, or the city-parish, as the case may be, upon (a) the adoption of an ordinance by the governing authority calling the election; or (b) the presentation to the governing authority of a petition calling for such an election signed by the electors equal in number to five percent of the registered voters of the city, the parish, or the city-parish, as the case may be.*

> (B) **Acceptance**. *If a majority of the electors vote to adopt this Part*, its provisions shall apply permanently to the city, the parish or the city-parish as the case may be, and shall govern it as if this Part had originally applied to it. In such case, all officers and employees of the city, the parish, or the city-parish, as the case may be, who have acquired civil service status under a civil service system established by legislative act, city charter, or otherwise, shall retain that status and thereafter shall be subject to and be governed by this Part and the rules and regulations adopted under it.

Section 1. **(A) State Civil Service**. The state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state, or any instrumentality thereof, and any joint state and federal agency, joint state and parochial agency, or joint state and municipal agency, regardless of the source of the funds used to pay for such employment. It shall not include members of the state police service as provided in Part IV of this Article or persons holding offices and positions of any municipal board of health or local governmental subdivision.

**(B) City Civil Service**. The city civil service is established and includes all persons holding offices and position of trust or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof. However, paid firemen and municipal policemen may be excluded if a majority of the electors in the affected city voting at an election held for that purpose approve their exclusion. The election shall be called by the municipal governing authority within one year after the effective date of this constitution.

Article 10, § 2 of the 1974 Constitution addresses classified and

unclassified service, and states in part (emphasis added):

Section 2. **(A) Classified Service**. The state and city civil service is divided into the unclassified and classified service. Persons not included in the unclassified service are in the classified service.

**(B) Unclassified Service**. The unclassified service shall include the following officers and employees in the state and city civil service:

(1) elected officials and persons appointed to fill vacancies in elective offices;

(2) *the heads of each principal executive department appointed by* the governor, *the mayor*, or the governing authority of a city[.]

Further, La.R.S. 33:2585 states (emphasis added):

A. The governing authority of any parish or municipality is hereby authorized to enact ordinances, by majority vote, permitting the inclusion, in any civil service system created by the governing authority of the parish or municipality, of any employees of any board, commission, or other local agency or special district created by or appointed by the governing authority of the parish or municipality,

---

(C) **Rejection**. If a majority of the electors vote against the adoption of this Part, the question of its adoption shall not be resubmitted to the voters of the political subdivision within one year thereafter.

*except those officials and employees who are prohibited from being included in the local civil service by the provisions of Article X, Section 15 of the Louisiana Constitution, and particularly the second paragraph thereof.*

Louisiana Constitution Article 14, § 14 of the 1974 Constitution provides transitional provisions, but the transitional provisions shall not "be construed or applied in such a manner as to supersede or invalidate, or limit or change the meaning of any provision of the foregoing Articles of this constitution, but only to provide an orderly transition from the Constitution of 1921." Louisiana Constitution Article 14, § 9 states:

> Upon the effective date of this constitution, all officers and employees of the state and of the cities covered hereunder who have status in the classified service shall retain said status in the position, class, and rank that they have on such date and shall thereafter be subject to and governed by the provisions of this constitution and the rules and regulations adopted under the authority hereof.

Additionally, La.Const. art. 10, § 15 allows city civil service systems to include some persons normally considered unclassified in the classified system. However, it specifically goes on to state:

> Nothing in this Part shall permit inclusion in the local civil service of officials and employees listed in Section 2 of this Article.
>
> No law enacted after the effective date of this constitution establishing a civil service system applicable to one or more parishes or to one or more municipalities having a population less than four hundred thousand shall be effective in any parish or in any municipality until approved by ordinance adopted by the governing authority of the parish or municipality.

Article 14, §16 provides a list of provisions in the 1921 constitution to be continued as statues except if they conflict with the 1974 constitution; the former Article 14, § 15 is not included in that list.

The 1974 Constitution superceded and replaced the 1921 Constitution. La. Const. art. 14, § 18. The transitional clause in the 1974 Constitution provides that city civil service employees shall retain the classified status that they had and,

6

thereafter, be subject to the provisions of the 1974 Constitution. However, there are no provisions that retain civil services boards formed under the 1921 Constitution. Quite to the contrary, Article 14, § 16 does not retain the provisions of the old constitution relative to local city civil service boards. Additionally, Article 14 § 18(B)specifically sates that "[l]aws which are in conflict with this constitution shall cease upon its effective date."

Based on the explicit provisions of the 1974 Constitution, we are compelled to find that Carron was not a classified civil service employee. We note that it is clear from the record that Carron's position was, in fact, considered classified by the municipal civil service commission. She took a civil service exam and was appointed to her position via a letter from the Opelousas Municipal Civil Service Commission on April 13, 1988. That letter notes a six-month probationary period in which she could be discharged without the right of an appeal, but goes on to state:

> Upon completion of your working test, your appointing authority shall so advise the board and furnish a signed statement to you of your acceptance as a permanent employee in this position.

There was further documentation relating to Carron's position, such as pay raises and revised job descriptions, all of which was authored by the municipal civil service commission. Further, in the Opelousas Municipal Civil Service Rules and Regulations, effective in 1962, the City Clerk and Tax Collector, is specifically listed under a section called "class titles" which assigns ranges in order to determine pay rate.

However, it is also clear that her position was considered to be a "municipal officer." In a 1999 resolution, the Board of Aldermen resolved to appoint municipal officer, Carron, to a term of four years. Various other resolutions reappointing Carron refer to her position as one of being a municipal officer.

7

Nevertheless, the provisions of the 1974 Constitution clearly exclude Carron's position from civil service classification, as she is the head of a principal executive department appointed by the mayor of the city. *See* La.Const. Art. 10 § 2 (B)(2) and Article 15. The 1974 Constitution supercedes the 1921 Constitution, and the City cannot elect to continue to be governed by the latter merely because it has been customary for it to do so. Accordingly, we find that the Civil Service erred in finding that she was a protected municipal civil service employee.

Next, we will address the case of *Eubanks v. City of Opelousas*, 590 So.2d 740 (La.App. 3 Cir. 1991), which Carron and the Board rely heavily upon in buttressing their argument that she is a protected employee under the civil service system. In *Eubanks*, a city employee, the street commissioner, was terminated from employment when the position of street commissioner was abolished. An exception of prescription was filed by the City because the employee did not timely appeal his termination to the City Civil Service Commission. In their discussion of the prescriptive issue, a panel of this court wrote:

> Plaintiff does not contest the fact that he is a classified City employee. Under Section 10 of Ordinance No. 11 of 1962 of the City of Opelousas, "(classified employees) shall be governed by the provisions of Article 14, Section 15 of the Louisiana Constitution, and rules and regulations adopted under such authority." La. Const.1921, Article 14, Section 15(O)(1), which was in effect when City Ordinance 11 of 1962 was enacted, stated, "There is vested in the State Civil Service Commissioner and in the appropriate Civil Service Commissions for the several cities respectively the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases. . .".
>
> Under the authority of La. Const.1921, Article 14, Section 15, which was then in effect, the City Civil Service Commission enacted Rule 11, Section 4.4 which states, "Appeals to the Board shall be filed within fifteen (15) days of the action or actions taken against the employee by the appointing authority." La. Const.1974, Article 10, Section 12, which was in effect when the action plaintiff contests occurred in 1987, also provides that, "Each commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, . . .".

8

*Id*. at 743-44.

We find that the reliance by our court on the 1921 Constitution was incorrect, however, we agree with the result reached in that opinion. A classified employee is required to timely appeal her termination to the civil service board and failure to do so could be successfully met with an exception of prescription.

We further find that, pursuant to Lawrason Act provisions, Carron's appointments were for four year terms. As is customary in the political climate of this state's cities and towns, the new mayor could and did appoint a new city clerk and tax collector, namely Karen Frank. Accordingly, we find the commission erred in reinstating Carron's position.[4]

## CONCLUSION

The judgment of the trial court finding that Carron was a classified employee is, hereby, reversed and her reinstatement to her position as City Clerk and Tax Collector is revoked.

Thus, appeal to the District Court and/or this Court was proper in these instances. All costs of this appeal are assessed against the plaintiff, Frances Carron.

**REVERSED.**

---

[4]Assignments of error numbers 2, 7, and 8 rendered moot by our previous findings and are not addressed here.