Dear Mr. Hollier:
You ask this office to advise whether the legislature is authorized to enact a statute which changes the manner of selection of the members of the City of Opelousas Municipal Civil Service Board (the Board), as provided for in the 1974 Constitution. Certain members of the current Board were appointed pursuant to La.R.S. 33:2587, as more fully explained below.
In essence, you seek our legal opinion regarding the constitutionality of La.R.S. 33:2587. Please be advised that this office rarely issues legal opinions addressing the constitutionality of a statute, other than to state the following elementary principle of statutory construction: all laws are presumed to be constitutional. Polk v. Edwards,626 So.2d 1128, 1132 (La. 1993); Interstate Oil Pipe Line Co. v.Guilbeau, 46 So.2d 113 (La. 1950); State on behalf ofJ.A.V., 558 So.2d 214 (La. 1990). It is not within the authority of this office to declare a statute to be unconstitutional. Rather, the determination of the constitutionality of a statute is a judicial function constitutionally vested in the courts. La.Const. Art. V § 1[1]; see also Beauclaire v.Greenhouse, 2005-0765 (La. 2/22/06) 922 So.2d 501, at 506. *Page 2 
While it is not the policy of this office to provide an opinion on the constitutionality of a statute, as this determination can only be made with finality by a court, we will outline our research, pursuant to our statutory duty to provide legal opinions on issues of state law. The following is an analysis a court might adopt if La.R.S. 33:2587 is judicially challenged. We provide this analysis so that the City of Opelousas Municipal Civil Service Board may make a more informed decision regarding the legal status of the current membership of the Board.
Before responding to your specific question, we first provide a brief review of the two general types of civil service systems operating in the state, as applicable here. We then examine the status of the civil service system operating in the City of Opelousas, and provide a potential analysis which, again, a court might adopt on the question of whether the legislature may change the composition and manner of selection of the members of the Opelousas municipal civil service board.
I. Civil service systems which are constitutionallycreated.
The first type of civil service system is the constitutionallycreated civil service system, as provided in La.Const. Art. X § 1, et seq. (1974).[2] Perhaps the most well-known constitutionally created civil service system is the State Civil Service, which generally includes all state employees.[3]
Another constitutionally created system is the City Civil Service, applicable to those cities having over four hundred thousand in population, as in the City of New Orleans.[4] There also exists those constitutionally created civil service systems, relevant to cities (and parishes, or city-parish governments) having a population between ten thousand and four hundred thousand, where a civil service system has been accepted within a city or parish by the affirmative vote of the local electorate.[5] We will refer to these systems as "local option" civil service systems. The acceptance of a civil service system by "local option" subjects such system fully and permanently *Page 3 
to the provisions of Part I of Article X of the Louisiana Constitution, i.e., La.Const. Art. X § 1-15.[6]
Each constitutionally created civil service system is governed by a civil service commission. The composition and method of selection of the members of each commission is also established by constitutional provision. La.Const. Art. X § 3(A) creates the State Civil Service Commission, composed of seven members appointed by the governor in accordance with La.Const. Art. X § 3(C). Within each city having a population over four hundred thousand, La.Const. Art. X § 4(A) creates a City Civil Service Commission, which "shall be composed of five members" appointed in accordance with the provisions of La.Const. Art. X § 4(C). Because the adoption of civil service by local option makes all the provisions of La.Const. Art. X § 1 through § 15 "apply permanently to the city, the parish, or the city-parish" under La.Const. Art. X § 14(B), the provisions of La.Const. Art. X § 4(C) govern and direct that these "local option" commissions be composed of five-member boards.
Each constitutionally created commission "is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service" under La.Const. Art. X § 10(A)(1). The rules and regulations adopted by these commissions have the effect of law under La.Const. Art. X § 10(A)(4).
II. Civil service systems created by the legislature,the parish, or the municipal governing authority.
The second category of civil service systems contains all other civil service systems which are not constitutionally created. In the absence of a civil service system adopted by local option, the legislature, the parish, or the municipal governing authority may establish a civil service system, pursuant to La.Const. Art. X § 15 (1974), providing in pertinent part:
 Nothing in this Part shall prevent the establishment by the legislature, or by the respective parish governing authority, of a parish civil service system in one or more parishes, applicable to any or all parish employees, except teaching and professional staffs and administrative officers of schools, or the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law. . . . *Page 4 
La.Const. Art. X § 15 (1974) permits the legislature to enact statutes providing for civil service boards for municipalities in the state. The legislature may do so by general law applying to every municipality statewide which fits the objective criteria spelled out in the general statute. See La. Atty. Gen. Op. 04-0041. The legislature may also enact a special law applying only by name to a particular municipality, especially where that municipality does not have a home rule charter. Id.
The legislature has indeed created civil service systems and governing commissions within the "City Civil Service Law", La.R.S.33:2391, et seq. However, by the terms of these general laws, they apply only to municipalities with populations over one hundred thousand, and do not apply to smaller municipalities such as the City of Opelousas. Our research reflects no general laws applying to municipalities with populations less than one hundred thousand.
III. The civil service system operating in the City ofOpelousas is a constitutionally created system.
The civil service system which today exists in the City of Opelousas falls within the first type of civil service system discussed — as a "local option" civil service system, it is a constitutionally created civil service system. Pursuant to La.Const. Art. XIV § 15(U) (1921), [7] a civil service system was adopted by the voters of the City of Opelousas at a special election held August 12, 1961. The polling language[8] asked, in pertinent part:
 Shall the employees and officers of the City of Opelousas, Louisiana. . . be subject to and governed by a civil service system based on merit, as provided for in Art. XIV § 15 of the Louisiana Constitution of 1921 as amended?
The terms of the proposition indicate that a majority of voters of the City of Opelousas agreed to "be subject to and governed by a civil service system. . . as provided for in Art. XIV § 15." The language of the proposition is in conformity with the "local option" provision of the 1921 Constitution, specifically, Art. XIV § 15(U)(a), which provided that all provisions of Art. XIV § 15 (1921) came to *Page 5 
"permanently apply to and govern the city. . . " upon voter acceptance. Thus, the composition of the municipal civil service board in the City of Opelousas became governed by Art. XIV § 15(D) (1921), establishing the Board as a three member board.[9]
Acknowledging the affirmative vote of the electorate, the Opelousas City Council adopted Ordinance 11 of 1962, creating the Municipal Civil Service Board of the City of Opelousas, and providing for the composition of the Board at Section II:
 The said commission shall consist of three members appointed by the Mayor and board of Aldermen of the City of Opelousas as provided by the terms of Art. 14 § 15(D) of the Louisiana Constitution. . . .
With the adoption of the 1974 Constitution, the provisions of La.Const. Art. XIV § 15 (1921) were carried forward to La.Const. Art. X § 1, et seq. Those constitutionally created commissions formed under the 1921 Constitution were not abolished by the adoption of the 1974 Constitution. Rather, the State Civil Service Commission continues in existence, and the composition of the Commission is now addressed by La.Const. Art. X § 8(A).[10] The New Orleans City Civil Service Commission continues in existence, and the composition of the Commission is now governed by La.Const. Art. X § 8(B).[11]
Similarly, those "local option" civil service systems adopted under La.Const. Art. XIV § 15(D) (1921) continue in existence under La.Const. Art. X § 14 (1974). The boards governing the "local option" civil service systems are now subject to the provisions of Part I of Article X of the 1974 Constitution, which places the composition of such boards within the provisions of La.Const. Art. X § 4(C), as follows:
 (C) Other Cities; Nomination and Appointment. In each other city subject to this Section, the presidents of any five institutions of higher education in the state, selected by the governing authority of *Page 6 
the respective city, each shall nominate three persons, after giving consideration to representation of all groups. The municipal governing authority shall appoint one member of the commission from the three persons nominated by each.
a. Const. Art. XIV § 15(D) (1921) provided for a three member board, while the 1974 Constitution now provides for a five member board under La.Const. Art. X § 4(C). There has been some discussion regarding whether or not the City of Opelousas board should continue as a three member board under the 1921 Constitution, or be reformed as a five member board under the 1974 Constitution. In fact, this office addressed the issue in La. Atty. Gen. Op. 96-144, and advised the City of Opelousas Municipal Civil Service Board, that "a municipality that already has an existing Civil Service Commission in accordance with the Constitution of 1921" did not need to change to a five member board under the 1974 Constitution.
We now determine that a court would reject the reasoning of Opinion 96-144 as "piecemeal", in that the analysis in Opinion 96-144 fails to recognize that the civil service system and the Board are now subject to all the provisions of Part I of Article X of the 1974 Constitution, and are not exempt from the application of La.Const. Art. X § 4(C) (1974). Thus, a court would find the City of Opelousas Civil Service Board is now required to have five members, to be appointed in conformity with the provisions of La.Const. Art. X § 4(C) (1974).
We pause here to examine the provisions of La.R.S. 33:2585. The statute requires a municipal civil service board to have at least one classified municipal employee as a board member, as follows:
2585. Civil service boards; member in classified service
 Except for any board or commission created by or pursuant to Article X, Section 4 of the Constitution of Louisiana and any board or commission created by or established in a home rule charter, the composition of which board or commission is specified in such home rule charter and is inconsistent with the provisions herein, each civil service board, regardless of how created or established, which has jurisdiction over parochial or municipal civil service employees shall have at least one member on such board who shall be an employee in the classified service, notwithstanding any other provision of law to the contrary.
 Such member shall be a full-time, permanent employee in the classified municipal or parochial service for a period of at least one year prior to the date on which he qualified as a candidate. Except *Page 7 
as otherwise provided by law, such member shall serve a term of five years, which shall commence on May 1 of the year in which he is elected.
[Emphasis added].
By the very terms of the statute, the provisions of La.R.S.33:2585 are inapplicable to the City of Opelousas board, as a constitutional civil service board operating under La.Const. Art. X § 4 (1974).
IV. La.R.S. 33:2587 adds two members to the City of OpelousasCivil Service Board; these additional members are not provided forin either the 1921 Constitution or the 1974 Constitution.
La.R.S. 33:2587 was enacted by Act 683 of the 2001 Louisiana Regular Legislative Session and provides:
 City of Opelousas Municipal Civil Service Board; board membership
 Notwithstanding any other provision of law to the contrary, the City of Opelousas Municipal Civil Service Board shall have two members who shall be selected by the classified employees of the City of Opelousas as provided in R.S. 33:2585 et seq. These two members shall be in addition to the membership of such board on June 25, 2001.
La.R.S. 33:2587 requires the City of Opelousas Municipal Civil Service Board to have two classified municipal civil service employees as Board members. La.R.S. 33:2587 is in conflict with La.Const. Art. X § 4(C) (1974), as Art. X § 4(C) provides for a five member board, appointed from nominations submitted by those university presidents referenced. The number of board members, and the method of their appointment, both as provided by Art. X § 4(C), are provisions which would supercede any contrary statutory provisions. The creation of additional positions on the board, appointed in a manner which varies from that provided in Art. X § 4(C), is in contradiction to La.Const. Art. X § 4(A), providing that "each commission shall be composed of five members. . . "[12] *Page 8 
The legislative power of the state is vested in the legislature. La.Const. Art. III § 1 (1974). In its exercise of the legislative power of the state, the legislature may enact any statute that the state constitution does not prohibit. The Louisiana Supreme Court instructs that "to invalidate legislation under the state constitution, we need to rely upon a particular constitutional provision which limits the otherwise plenary power of the legislature to enact the controverted statute". See New OrleansFirefighters v. Civil Service Commission of the City ofNew Orleans, 422 So.2d 402 (La. 1982) at page 406; see alsoLouisiana Public Facilities Authority vs. Foster, 2001-0009 (La. 9/18/01) 795 So.2d 288, 298.
Applying the analysis of the Louisiana Supreme Court as explained, a court might determine that the wording of La.Const. Art. X § 14(B) limits the ability of the legislature to change the composition of a "local option" civil service board, as this constitutional provision directs that the manner in which the Board is constituted under La.Const. Art. X § 4(C) shall applypermanently to the city. A court might find La.R.S.33:2587 to be an unconstitutional act of the legislature, because the statute adds two members to the Board, changing the composition of the Board in a manner other than as permanently provided by La.Const. Art. X § 4(C).[13]
Elaborating upon the autonomy of those civil service systems which are constitutionally created, the Louisiana Supreme Court has opined:
 Under the 1974 Louisiana Constitution, the Civil Service Commissions are autonomous bodies with circumscribed duties. The merit system they administer is self-operative and established in the Constitution. Their constitutionally delineated powers and duties are above change or modification by the Legislature; and such powers and duties are exclusive.
See Civil Service Com'n of City of New Orleans v. Guste,428 So.2d 457, 462 (La. 1983). *Page 9 
The Court in Guste, supra, provided further insight from the delegates formulating the 1974 Constitution:
 The delegates to the 1973 Constitutional Convention were of the expressed opinion that the Louisiana Legislature ought not be able to alter the powers or functions of the civil service commissions.
Several constitutional convention delegates recalled first hand an earlier time in Louisiana's history when the Legislature so amended the civil service provisions in the constitution (when constitutionally permitted to do so by a two-thirds vote) as to render them ineffectual. IX Transcripts from the 1973 Constitutional Convention 2604, 1606, 2626, 2628, 2757. Twice the delegates rejected proposals which would have allowed the Legislature by a two-thirds vote, or by even a three-fourths vote, to amend or modify the constitutional civil service provisions. IX Transcripts from the 1973 Constitutional Convention 2595-2654. The interest and intent of a majority of the delegates in formulating the 1974 Constitution was to create an independent, autonomous, non-political state and city civil service "safeguarded and removed as far as humanly possible from any form of political influence or any suspicion of political influence or control." 3 C.E. Dunbar, Jr. Project of the Constitution for the State of Louisiana 500 at 504 (1954).
See Guste, supra, at page 461; [Emphasis added].
Constitutional provisions are not subject to amendment or repeal by general laws enacted by the Legislature. City of Monroe v.Louisiana Public Service Commission, 97 So.2d 56
(La. 1957); Greater Livingston Water Co. v. Louisiana Public ServiceCommission, 164 So.2d 325 (La. 1964). If a court finds La.Const. La.Const. Art. X § 4 (1974) supercedes La.R.S.33:2587, the procedure set forth in La.Const. Art. XIII § 1 (1974) for constitutional amendments would become the exclusive manner to effect a change in the composition of the City of Opelousas Municipal Civil Service Board.
V. Conclusions.
As we have already stated, all statutes, including La.R.S.33:2587, are presumed to be valid acts of the legislature, until a court of competent jurisdiction determines otherwise. Our research reflects no judicial declaration adversely affecting the presumed constitutionality of La.R.S. 33:2587.
However, it is the opinion of this office that if La.R.S. 33:2587
is judicially challenged, a court is likely to find that La.R.S.33:2587 is unconstitutional, on *Page 10 
the basis that the provisions of La.R.S. 33:2587 conflict with La.Const. Art. X § 4(C) (1974). A court is, in our opinion, likely to find La.Const. Art. X § 4(C) (1974) to be controlling, as a constitutional provision prevails over any statutory provision to the contrary. Such a determination would establish the Opelousas Civil Service Board as a "commission. . . composed of five members" under La.Const. Art. X § 4(A), to be appointed in the manner provided by La.Const. Art. X § 4(C).
We hope the foregoing is helpful to you. Should you have other questions is which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
 Honorable Donald Cravins, Sr. Mayor, City of Opelousas Post Office Box 1879 Opelousas, LA 70571-1879
 Ms. Linda Walker Civil Service Director City of Opelousas 105 North Main Street Opelousas, LA 70570
 Louisiana Department of State Civil Service Mr. Robert Boland, General Counsel P.O. Box 94111, Capitol Station Baton Rouge, LA 70804-9111
[1] La.Const. Art. V § 1 provides "the judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article".
[2] We do not find it necessary here to discuss the fire and police civil service systems established by La.Const. Art. X § 16 (1974), other than to state these systems are separate from the municipal civil service systems.
[3] La.Const. Art. X § 1(A) provides "the state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state. . . ."
[4] La.Const. Art. X § 1(B).
[5] La.Const. Art. X § 14(A).
[6] La.Const. Art. X § 14(B).
[7] La.Const. Art. XIV § 15(U) (1921) is the counterpart to La.Const. Art. X § 14(A) (1974); both provisions permit adoption of civil service systems by local option, where a city or parish has a population exceeding ten thousand but not exceeding four hundred thousand, as Art. X § 14(A) now provides.
[8] See Carron v. City of Opelousas, 2007-506 (La. App. 3 Cir. 11/21/07) 970 So.2d 1205, at page 1207.
[9] La.Const. Art. XIV § 15(D) (1921) provided, in part, that "there is hereby created an established a city civil service commission. . . to be composed of three citizens who are qualified voters of the city in which they serve, two of whom shall constitute a quorum. One member shall be appointed by the governing body of the city. The other two members of the commission shall be appointed as follows. . . " Art. 14 § 15(D) goes on to require the governing authority to appoint two members selected from nominations made by the Presidents of the universities listed in La.Const. Art. 14 § 15(C) (1921).
[10] See La.Const. Art. 14 § 15(C) (1921).
[11] See La.Const. Art. 14 § 15(D) (1921).
[12] We acknowledge that La.Const. Art. X § 4(A) (1974) mandates the existence of a city civil service system in each city having a population exceeding four hundred thousand. If read in a vacuum, the provisions of Art. X §§ 4(A) and (C) could be interpreted to apply only to the composition of boards meeting those population requirements. However, La.Const. Art. X § 14(B) (1974), governing local option systems, provides that "if a majority of the electors vote to adopt this Part, its provisions shall apply permanently to the city. . . .and shall govern it as if this Part had originally applied to it". The phrase "this Part " means and includes Art. X §§ 4(A) and (C), which provide for a mandatory five member board. To interpret Art. X §§ 4(A) and (C) as applicable only to those cities having populations exceeding four hundred thousand would give no meaning to the directive of La.Const. Art. X § 14(B), and would also undermine the expressed desire of the voters to have a civil service system governed specifically by Part I of Article X.
[13] The conclusion is the same were a court to find the Board must continue to operate as a three member board, pursuant to La.Const. Art. XIV § 15(D) (1921). The adoption of a "local option" civil service system under the 1921 Constitution similarly required the permanent application of a three member board under Art. XIV § 15(D), making La.R.S.33:2587 in conflict with the provisions of both the 1921 and 1974 Constitutions providing for the composition of a "local option" board.